**Otis HINDMAN, Plaintiff-Appellee,**

v.

**The CITY OF PARIS, TEXAS, Andrew Smith, and Charles G. Whitley, Defendants-Appellants.**

**No. 83-2495.**

United States Court of Appeals, Fifth Circuit.

Nov. 19, 1984.

---

T.K. Haynes, City Atty., Hardy Moore, Paris, Tex., for The City of Paris, Tx.

J.D. McLaughlin, Paris, Tex., for Smith & Whitley.

Jim D. Lovett, James R. Rodgers, Paris, Tex., for plaintiff-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The city of Paris, Texas and two Paris police officers appeal from a judgment entered against them for violating Hindman's civil rights in the course of obtaining and executing a warrant of arrest. In a bifurcated trial of liability and damages, a jury found that Hindman had been arrested without probable cause, and that the arresting officers had not acted in good faith. Eighteen months later, a different jury awarded Hindman $50,450 in damages. Persuaded that the trial judge should not have taken from the first jury the factual issue of whether the officers deceptively obtained the warrant used to arrest Hindman, we reverse and remand for a single trial of both liability and damages.

## I

E.G. Hardy owns the Hardy Oil Company of Paris, Texas, a distributor of Fleetwood brand tires in Northeast Texas. Hardy's stepson, Stan, worked at Hardy Oil as a tire salesman. Frederick Reed, a black man, also did "odd jobs" at Hardy Oil. In late 1977 or early 1978, Stan Hardy apparently decided to make some extra money. Without his father's permission, Stan took Fleetwood tires from the warehouse and gave them to Reed to sell, with Stan and Reed splitting the proceeds. Among those who bought tires from Reed was Otis Hindman, who runs an Exxon station in Paris.

On January 18, 1978, E.G. Hardy reported to Charles Whitley, assistant chief of the Paris police, that he had lost 200 to 300 tires, that he had been told that Reed had been stealing the tires, and that he believed that 20 to 30 of the tires were at Hindman's Exxon station. Whitley asked Officer Bobby Hundley to pay an "undercover" visit to Hindman's service station. Hundley reported back that he had seen Fleetwood tires in a back storeroom. Whitley then assigned Detective Andrew Smith to the case.

On Friday, January 20, Smith went to the service station and spoke with Hindman. Hindman told Smith that he had Fleetwood tires for sale, and that he had bought them, for cash, from a black man. Hindman showed Smith the tires. Smith then asked if Hindman would accompany him to the station and identify the black man's picture in a "mug shot" book. Hindman declined, stating that he feared identifying the wrong man. He offered to identify a suspect in person.

Smith then began to confiscate the tires. Hindman objected, and asked that E.G. Hardy first be brought to the station to identify the tires. Smith said that this was not necessary. Smith then agreed to leave the tires at the station upon Hindman's assurances not to dispose of the tires.

Smith later testified that Hindman appeared to be nervous during this encounter.

Smith returned to the police station and reported to Whitley. The two then went to the county attorney's office. They asked the county attorney to prepare an affidavit for a search and arrest warrant.

In the affidavit of January 20, Smith[1] swore that: (1) Smith had within the past twenty-four hours seen 17 Fleetwood tires at Hindman's service station and "personally observed Otis Hindman in possession of the tires"; (2) E.G. Hardy had on January 18 reported the theft of 300 Fleetwood tires from his Paris warehouse; (3) Smith knew "that Hardy Oil Company is the only Fleetwood Tire dealership in the North East Texas area"; (4) Smith "received information from a confidential informant that a black man has been selling these tires for $25.00 each to individual service stations in Lamar County area"; (5) "Confidential informant has given Affiant information for the past six months dealing with burglary and theft and on each and every occasion informant is said to be true and correct."

Smith and Whitley took the affidavit to a Justice of the Peace, who issued the warrant. They then returned to the service station in an unmarked car, arrested Hindman for knowingly possessing stolen goods, and seized the tires.

The two policemen took Hindman to the station, and photographed and fingerprinted him. Hindman was held for about one hour until being released into his attorney's custody. On Monday, when Hindman appeared in court, he was told that the charges had been dropped. E.G. Hardy had requested that all charges be dismissed after learning that his stepson would have to be prosecuted if Reed or Hindman was.

In April of 1978, Hindman filed this § 1983 suit against Whitley, Smith, and the City of Paris, claiming his arrest was unlawful. Over defendants' objection, the district court bifurcated the liability and damages phases.

---

**1.** Although Smith's name was on the affidavit, Whitley testified at trial that he had supplied the facts to the county attorney.

At the first trial, the county attorney testified that he understood the affidavit to mean that a single confidential informant had told the police about the black man selling tires and had given them other reliable information in the past. At trial, Whitley testified that E.G. Hardy was the informant who had told of the black man selling tires. Whitley stated that E.G. Hardy was also the informant who had given reliable information in the past.

Whitley was then confronted with his deposition testimony, in which he had said that although Hardy was the informant about the tire seller, a different person had given reliable information in the past. Despite his deposition testimony, Whitley continued to insist that the affidavit referred to only one informant, E.G. Hardy. Later, E.G. Hardy was called to the stand. On cross-examination by Hindman's attorney, Hardy denied that he was the informant who had given the police information dealing with burglary and theft in the six months preceding the theft.

Before the case on liability went to the jury, the district court ruled as a matter of law that the search warrant was invalid. It gave the following explanation to counsel:

> I can also state for the record that I considered the Chief of Police's testimony that the confidential informant was the owner of the tires to be inaccurate and misleading....
>
> I find the search warrant is invalid because (1) it does not establish the reliability of the principal witness in the face of the search warrant, the principal witness being the owner of the tires; secondly, I find that the so-called confidential informant was not as testified to by the Chief of Police, the owner of the tires; hence, the search warrant fails. The warrant of arrest is invalid because there is no allegation that the plaintiff in this case knew the property to be stolen or had reasonable grounds to believe it was stolen.

The court instructed the jury not to consider the warrant as a justification for the search and arrest. During its deliberations, the jury sent a note to the judge asking why he had ruled the warrant invalid. The judge replied, citing the same reasons he had given to counsel.

The jury then answered special interrogatories as follows: (a) Smith and Whitley did not have probable cause to arrest Hindman; (b) Smith and Whitley "acted in personal good faith and with a reasonable belief in the constitutional validity of the arrest"; (c) Smith and Whitley "knew, or reasonably should have known, that in arresting plaintiff at the time and on the occasion in question [they] violated the settled and unquestioned constitutional rights of plaintiff"; (d) that it was a custom and practice of the City of Paris police to secure arrest warrants without probable cause, "through the device of applying for a search warrant with an arrest warrant incidentally included therein"; (e) that it was a custom and practice of the City of Paris police to make arrests without probable cause. The district court ruled that these answers established liability against the defendants.

At the second trial, the district court instructed a new jury that a previous jury had found that the defendants had violated Hindman's "settled and unquestioned constitutional rights." The second jury, after hearing evidence, awarded Hindman $50,-000 for past and future mental anguish and harm to reputation, and $450 for the loss of the tires.

## II

### 1

The city and police officers argue that the search warrant was valid, that E.G. Hardy was the confidential informant whose reliability had been proved, and that the trial court was "wholly without justification" in instructing the jury otherwise. Hindman responds that it was "glaringly apparent" that Hardy was not the informant who had supplied reliable information in the past, and that the warrant was therefore invalid.

■ If it were true that Whitley and Smith had two separate informants in mind when they had the affidavit prepared, then we would agree that the warrant was invalid as a matter of law. On its face, the warrant's statement that a confidential informant had supplied correct information in the past is meant to bolster the confidential tip about the tire theft referred to in the preceding sentence. If the officers knew that the trustworthy informant was not the person who had given them information about the tire theft, and yet signed the affidavit as it was, they intentionally or recklessly misled the county attorney and the Justice of the Peace. Under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), statements in an affidavit based on intentional or reckless misrepresentations must be struck, and the warrant's validity then judged based on its remaining contents. We would then disregard the statement concerning the confidential informant's trustworthiness.

The remainder of the affidavit avers only that Fleetwood tires had been stolen from Hardy Oil Company, that Hardy was the only Fleetwood dealer in the area, that Hindman had Fleetwood tires in his possession, and that an informant of unstated reliability had said that the stolen tires had been sold to service stations in Paris. There is no corroborating evidence that Hindman's tires were the ones that had been stolen, or that Hindman knew that the tires had been stolen. Without such corroboration, the unknown informant's tip does not provide sufficient probable cause to tie Hindman to the crime. *Cf. Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2334–35, 76 L.Ed.2d 527 (1983) (independent corroboration may allow reliance on anonymous informant of unknown veracity).

If, however, E.G.· Hardy was the only informant in the officers' minds when they prepared the affidavit and obtained the warrant, we would hold the warrant valid. With the addition of an assertion that the tip about the sale of the stolen tires to Hindman by an unauthorized person at a presumably cheap price had come from a *reliable* informant, a magistrate could find

that tip probative. *See Gates*, 103 S.Ct. at 2329, *citing United States v. Sellers*, 483 F.2d 37 (5th Cir.1973). The magistrate may have concluded there was probable cause to believe that Hindman's tires were stolen from Hardy and sold to Hindman under sufficiently suspicious circumstances, that Hindman knew or should have known they were stolen. With this necessary link, the warrant adequately, if barely, demonstrates probable cause for the search and arrest. The key question, then, was whether Whitley and Smith were referring to two different people in the last two sentences of the affidavit.

■ The issue of the officers' truthfulness and intent at the time they applied for the warrant is one of fact. *United States v. Freeman*, 685 F.2d 942, 948 n. 3 (5th Cir.1982); *United States v. Farese*, 612 F.2d 1376, 1377 (5th Cir.1980). Normally, this issue presents itself at suppression hearings preceding criminal trials, and the court is necessarily the factfinder. *See, e.g., Freeman, supra; Farese, supra; United States v. Bradsby*, 628 F.2d 901, 904 (5th Cir.1980).

In the context of a § 1983 suit for unlawful arrest, however, we believe that the jury, if one is present, should be the primary factfinder. Unlike a criminal case, in a civil suit attacking the legality of an arrest, a *Franks v. Delaware* factual dispute is not preliminary to a ruling upon the admissibility of evidence. Rather, it presents a classic issue of historical fact central to the substantive issues.

When a jury is empaneled, it "is the sole judge of the facts of the case." *Garris v. Rowland*, 678 F.2d 1264, 1270 (5th Cir.), *cert. denied*, 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982). In *Garris*, we held that "where facts relied upon to show probable cause in a § 1983 action [for false arrest] are controverted, they must be resolved by the jury before controlling legal principles are applied." *Id.; see also Trejo v. Perez*, 693 F.2d 482 (5th Cir.1982). Similarly, if the facts here were sufficiently disputed to avoid a directed verdict on the

**1068**

issue of the officers' alleged deception, the jury should have resolved that issue before the court ruled on the affidavit's validity.[2] We therefore must decide whether the court below was correct in issuing what amounted to a directed verdict that the officers had two informants in mind.

In the first trial, Whitley testified unequivocally that E.G. Hardy was the sole confidential informant contemplated in the affidavit. Whitley stuck to this position after Hindman's counsel pointed to its inconsistency with his deposition and pointed out that Hardy was referred to by name elsewhere in the affidavit and even after Hardy took the stand and denied that he had been the confidential informant.

 Although a jury might well have chosen not to believe Whitley's testimony in the face of this contrary evidence, the question of a witness's credibility is the purest of jury issues. Whitley's story, even though contradicted, was enough if the jury believed him. *See Branch v. Chevron International Oil Co.,* 681 F.2d 426, 430–31 (5th Cir.1982) (jury question was presented by plaintiff's testimony describing scene of accident, despite defendant's testimony flatly contradicting plaintiff's description). This case, like *Branch,* is distinguishable from *Ralston Purina Co. v. Hobson,* 554 F.2d 725, 728–29 (5th Cir.1977), in which we found that "completely self-serving testimony, unsupported by other evidence and in the teeth of universal experience" did not present a jury question. The defendants presented some evidence that E.G. Hardy had reported crimes to the police in the past in an attempt to establish that he was the informant who had given reliable information. We are also not prepared to hold that the naming of Hardy in the affidavit placed

Whitley's claim that Hardy was the confidential informant "in the teeth of universal experience." It is undisputed that Hardy *was,* at least, the "confidential informant" who gave information to the police about the black man selling the tires. We hold that the district court erred when it took the issue from the jury.

**2**

 Whether this claimed error was preserved for appeal is not immediately apparent. The pretrial order listed as a "contested issue of fact ... 1. the facts surrounding the drafting of the second warrant.... 3. Whether or not the search warrant refers only to one informant." The pretrial order also listed the ultimate validity of the warrant as a question of law. The officers' counsel told the jury in his opening statement that they would find that the affidavit was correct. Yet the district judge resolved the fact question and informed the jury that he had done so. When defendants' counsel was confronted with the proposed charge, he objected: "First, we object to the charge because of the court finding that the search warrant is invalid and the instruction to the jury that it is invalid." In the face of the district court's forthright and explicit ruling in a charge conference over a proposed written charge, a practice we commend, this point was preserved.

Defendants' appellate attack on the judgment is sweeping, and we are not confident as to the precise footing of all their arguments. But it is certain that the defendants, on appeal, complain of the district court's instruction to the jury that the warrant was invalid in light of the fact that the jury was also asked to determine the validity of the arrest, sans warrant, as well as

---

**2.** This could have been done through special interrogatories. The jury could have been asked,

"Has the plaintiff proved by a preponderance of the evidence that Officers Smith and Whitley intentionally or recklessly misled the Justice of the Peace into believing that the affidavit referred to only one confidential informant?"

If the jury answered "Yes," it would have proceeded to answer the remaining interrogatories. If it answered "No," the jury would have been told to stop. The court would then have been obliged, as we have explained, to hold that the warrant was valid. A verdict for defendants would then have followed. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

the good faith of the arresting officer. The court told the jury that it found the warrant invalid because "the 'confidential informant,' in the opinion of the court, was not the owner of the tires," thereby rejecting the testimony of Whitley. The jury found there was no probable cause for an arrest without a warrant and, despite the trial court's instruction regarding the warrant, the jury decided that the officers had acted in subjective good faith, a pre-*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) inquiry.

The root cause of the inconsistent conclusions of judge and jury and the complained-of instruction to the jury is that the same trier of fact ought to have decided all the fact questions, intertwined as they were. We do not see how a jury can be expected to pass upon whether there was probable cause for an arrest without a warrant and whether the officer acted in good faith, now measured objectively, when they have just been told by the trial judge that he did not believe the officers and there was no probable cause for a warrant. We could rest on appellants' quarrel with the trial court's telling the jury of the factual grounds for his ruling. But this error, and it was, is only a manifestation of the more basic difficulty of not submitting to the jury the factual disputes regarding the warrant. Whether the error be viewed as the judge telling the jury that he did not believe Whitley or in not submitting to the jury all fact issues, defendants would be entitled to a new trial. We prefer to reach through to the underlying error and thereby correct not only the error here but also prevent its repetition.

### III

The city urges that it could not be liable even if the arrest were illegal because proof of policy or custom was not made, as required by *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The jury found in answer to a special interrogatory that: "It was a custom and practice of the Paris Police Department at the time of Hind-

man's arrest to secure warrants of arrest without a showing of probable cause through the device of applying for a search warrant with an arrest warrant incidentally included therein, and that their practice directly caused plaintiff to be deprived of a settled and unquestioned constitutional right."

After this case was tried, we explicated the application of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018; 56 L.Ed.2d 611 (1978) in our circuit. *See Webster v. City of Houston*, 735 F.2d 838 (5th Cir.1984) (en banc); *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984) (en banc). While Hindman's burden will be difficult, because this case must be tried again in a single trial on liability and damages in any event, we are persuaded that Hindman ought to be afforded the opportunity to prove that the city is liable under *Monell*, as explained in *Webster* and *Bennett*, leaving to the trial judge to decide in the first instance whether a jury question is made out.

REVERSED AND REMANDED.