Hardy DOTSON, III,
Plaintiff-Appellant,

and

Employers Insurance of Wausau,
Intervenor-Appellant,

v.

CLARK EQUIPMENT COMPANY,
Defendant-Appellee.

No. 85–4175.

United States Court of Appeals,
Fifth Circuit.

Feb. 24, 1986.

Brumfield & Brumfield, H. Alva Brumfield, III, William P. Brumfield, Baton Rouge, La., for Dotson.

Alex F. Smith, Jr., Shreveport, La., for Employers Ins. of Wausau.

Hudson, Potts & Bernstein, Jesse D. McDonald, Gordon L. James, Monroe, La., for Clark Equipment Co.

Before GEE, RUBIN and DAVIS, Circuit Judges.

GEE, Circuit Judge:

In this product liability case, appellant Hardy Dotson appeals the district court's judgment n.o.v. entered after the jury had found appellee Clark Equipment Co. liable for Dotson's injury. Because substantial evidence in support of the jury verdict exists, the district court erred in granting Clark Equipment's motion. We therefore reverse the judgment n.o.v. and remand to the district court for a decision on Clark Equipment's accompanying motion for new trial.

Working for a Louisiana roofing manufacturing company, Dotson operated a Clark forklift to transport rolls of roofing felt to the company's warehouse. One day in 1981, he was using the forklift to move two pallets of the rolls when several fell from the top pallet. One roll somehow struck him in the back of the neck, instantly rendering him paraplegic. No one witnessed the accident.

Dotson brought this diversity action in federal district court, claiming that the forklift was defective under Louisiana product liability law. The main question at trial was how the injury occurred. Dotson asserted that a falling roll struck the forklift's canopy and cartwheeled into the driver's compartment through the space under the rear of the canopy; the accident thus occurred, he contends, only because the forklift's faulty design provided insufficient protection from the rear. Clark Equipment propounded a different theory: Dotson was leaning out from under the protection of the canopy when struck. In that event, no liability could result, since Dotson assumed the risk of injury. After both parties presented their cases, the jury found Clark Equipment liable and assessed damages of $1,959,480. Clark Equipment then moved for judgment n.o.v. or, alternatively, for a new trial. The district court eventually entered judgment n.o.v. pursuant to Fed.R.Civ.P. 50, a judgment which Dotson now appeals.

*Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc), provides the test a district court must use in determining whether to grant judgment n.o.v. The court must consider all evidence presented and view it most favorably to the non-moving party. *Id.* at 374. Judgment n.o.v. is proper if the evidence would prevent any reasonable jury from reaching a contrary verdict. *Id.* On the other hand, if the

record contains substantial evidence in support of the actual jury verdict, judgment n.o.v. would be an improper intrusion into the jury's province; "... it is the function of the jury as the traditional finder of the facts, and not the court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Id.* at 375.

We must therefore determine whether substantial evidence existed. The *Boeing Co.* court defined "substantial evidence" as "evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions ..." *Id.* at 374. Because this definition provides little real guidance, further inquiry is necessary. Clark Equipment would have our search end with *Ralston Purina Co. v. Hobson*, 554 F.2d 725 (5th Cir.1977), a case in which we affirmed the district court's judgment n.o.v. Its reliance on *Ralston Purina* is misplaced, however, because that case differs from ours in two respects.

■ First, in *Ralston Purina*, defendant Hobson posited theories that were naturally impossible. For example, he theorized that Ralston Purina's suspension of feed shipments induced cannibalism among his chickens. Because cannibalism is a phenomenon unknown to that species, judgment n.o.v. was appropriately entered against Hobson; "(e)vidence manifestly at variance with the laws of nature and the physical facts is of no probative value and may not support a jury verdict." 554 F.2d at 729 (citations omitted). Despite Clark Equipment's contrary assertions, we do not view this as a natural impossibility case. Although it is admittedly difficult to imagine a heavy roll of roofing material falling forward, hitting the forklift's canopy, and cartwheeling backward underneath the canopy to strike Dotson, such a thing is nevertheless possible, especially since several rolls fell. Collisions among the rolls as they were falling might have caused the improbable to occur. In short, we conclude that the cartwheeling rolls and cannibalistic chickens are not birds of a feather. Although Dotson's story is certainly far-

fetched, we cannot deem it impossible. Beasts such as farmer Hobson's cannibalistic chickens, on the other hand, should be relegated to the storybooks, there to roam among the unicorns, the centaurs, and the chimeras.

Second, in *Ralston Purina*, Hobson relied on his own self-serving testimony alone. Especially in the face of uncontradicted testimony by plaintiff's experts, his pet theories were insufficient to support a jury award of damages. We thus held that a directed verdict or judgment n.o.v. is proper in such circumstances. *Id.* at 728–29. Dotson, however, introduced the testimony of experts in support of his theory. For example, a forensic scientist testified that the nature of Dotson's injury made his theory more plausible than that of Clark Equipment. Given such expert testimony, the jury in today's case did not have to resort to unfounded speculation, which is the evil the *Ralston Purina* court sought to prevent. *Id.* at 729. Because of these factual distinctions, we find *Ralston Purina* inapposite to consideration of this case.

■ The record, in fact, convinces us that sufficient evidence was presented to create a jury issue. The testimony of Dotson's witnesses bolstered his own version of the accident. Because Clark Equipment presented other witnesses to discredit Dotson's case, resolution of the case required credibility determinations. This renders improper a judgment n.o.v.; "the question of a witness's credibility is the purest of jury issues." *Hindman v. City of Paris, Texas*, 746 F.2d 1063, 1068 (5th Cir.1984). Because the jury apparently found Dotson and his witnesses more believable, the district court erred by second-guessing the jury's decision.

We therefore reverse the judgment n.o.v. In remanding, we note the district court's failure to rule on Clark Equipment's alternative motion for a new trial. Although consideration of the new trial motion should have accompanied that of the motion for judgment n.o.v., the district court may review the matter on remand. Our holding today impinges in no way on that

decision, since a judgment n.o.v. differs greatly from a new trial order:

> Although in considering motions for judgment non-obstante, the judge may not assay the comparative weight of the evidence pro and con—only whether, in light of all the evidence, that opposed to the motion is substantial when favorably regarded—a motion for new trial he is free to do so ... Deference is accorded his first-hand opportunity to view the witnesses and their demeanor, and he is empowered to grant a motion for a new trial when he determines that the verdict is against the great—but not merely the greater—weight of the evidence.

*Eyre v. McDonough Power Equipment, Inc.,* 755 F.2d 416, 420 (5th Cir.1985). The district court's judgment is therefore REVERSED and the case is REMANDED for a decision on defendant's new trial motion.