Georgia MONTGOMERY,
Plaintiff-Appellant,

v.

TRINITY INDEPENDENT SCHOOL DISTRICT, et al.,
Defendant-Appellee.

No. 86–2235
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1987.

Larry Watts, Houston, Tex., for plaintiff-appellant.

Joe B. Hairston, Tracey Whitley, Austin, Tex., for defendant-appellee.

Before GEE, JOLLY, and HIGGINBOTHAM, Circuit Judges.

**PER CURIAM:**

Georgia Montgomery, a probationary teacher whose contract was not renewed, alleged that her nonrenewal was based on her constitutionally protected activities as an active member of the Texas State Teachers Association. After she presented evidence of her claims, the district court directed a verdict for the defendant. She now appeals that judgment.

### Facts

Mrs. Montgomery was employed by the Trinity Independent School District ("Trinity I.S.D."), Trinity, Texas, as a probationary teacher for two years, from 1981–1983. During that time she was elected president of the Texas State Teachers Association ("TSTA"), an unincorporated association organized to promote the interests of teachers and educators. Also during that time, the school principal resigned and was replaced by another, one John Copley. Trinity I.S.D. maintained a policy of semiannual teacher evaluations—conducted by the principals in November and February. The former principal had evaluated Mrs. Montgomery in the "outstanding" category; Mr. Copley, on the other hand, evaluated her at the less favorable "high satisfactory" level. Moreover, under Mr. Copley, the teachers received one evaluation only during 1982–83—the February evaluation.

In the Spring of 1983, the school district held a tax rollback election which lowered the property taxes that fund the school district. Before and during the election the TSTA held community education meetings on the rollback effort. Mrs. Montgomery later testified that, although she harbored mixed feelings, she voted to oppose the tax rollback.

Before the rollback election, Joyce Holt, the school district superintendent, bought ads in the local newspaper which represented that any reduction in staff occasioned by the rollback would be done on a "last hired—first fired" basis, and that every effort would be made to protect teacher positions. At some point after the date of the rollback election, Mr. Holt and the

Board decided to use the teachers' evaluation scores as the basis for determining which teachers should be terminated. Based on this decision, Mr. Holt issued nonrenewal letters to eight probationary teachers, including Mrs. Montgomery.[1] In the letters, Mr. Holt offered to help the non-renewed teachers to find other positions; and indeed, once the school board began rehiring teachers that summer, Mrs. Montgomery was notified in writing by Mr. Holt on two separate occasions. Mr. Holt recommended that Mrs. Montgomery be rehired on the first occasion, but the Board did not accept his recommendation. Mrs. Montgomery was the only nonrenewed teacher that he recommended. On the second occasion, Mr. Holt did not recommend Mrs. Montgomery for a position. None of the nonrenewed probationary teachers returned to Trinity I.S.D.

Mr. Holt testified that he also made favorable recommendations about Mrs. Montgomery to "one, possibly two" other school districts which telephoned him. Mrs. Montgomery testified, on the other hand, that when she was called in to apply for the job in June 1983, Mr. Holt conditioned the offer on her dropping her lawsuit filed in May 1983. She also stated that she asked whether she would be rehired as a probationary teacher or whether, having served her two years of probation, she would be employed under a tenure contract. Mrs. Montgomery testified that Mr. Holt promised to get these answers and re-contact her but never did so.

When Mrs. Montgomery was first notified of her nonrenewal, she wrote requesting a hearing to determine if her constitutional rights had been violated. Although they were not entitled to such a hearing, one was granted her and the other terminated teachers. At the hearing, Mrs. Montgomery testified that she felt her disagreements with the policies of her principal, Mr. Copley, were probably the cause of her nonrenewal. She admitted that these were personal disagreements, adding that other teachers knew about them, however. She had not lodged any complaint about these disagreements either with the Board or with Mr. Holt, nor had she communicated these problems to members of the community or non-faculty members. Mrs. Montgomery admitted that the evaluation system was used as a basis for her nonrenewal and did not dispute Mr. Copley's right to evaluate her. She made no allegation at that time that the non-renewal was a form of retaliation against her for her TSTA activities. Mrs. Montgomery could name no member of the Board who might have wished to retaliate against her, but felt that her husband's outspokenness in support of the tax rollback measure may have been a factor in the nonrenewal decision.

### Proceedings at Trial

The complaint in this cause asserts that Mrs. Montgomery's TSTA activities were a substantial and motivating factor in her nonrenewal, and that an evaluation procedure conducted in violation of the school board's established policy formed the basis of her nonrenewal. The named defendants are Trinity I.S.D.; Joyce Holt, individually and in his official capacity as superintendent of the Trinity I.S.D.; John Copley, individually and in his official capacity as principal of the elementary school; and, the Board of Trustees of Trinity I.S.D.

The district court directed a verdict for the defendants on the second day of trial, noting in its order that some of Mrs. Montgomery's claims were not properly raised by the pleadings, that she had received all process that was due at the school board hearing, and that she had offered little or no evidence to take her substantive due process and First Amendment claims of denial of free speech to the jury. The court also noted that while Mrs. Montgomery may have had a colorable First Amendment freedom of association claim with re-

---

**1.** Appendix A provides a breakdown of all probationary teachers with their evaluation scores and union affiliation.

gard to her husband's activities supporting the rollback measure, she never raised such a claim in her pleadings.

### Analysis

Before us, Mrs. Montgomery argues that the trial court erred in entering a directed verdict in favor of the defendants because she offered sufficient facts at trial to create a conflict in substantial evidence on the question of defendants' non-renewal of her contract based on constitutionally impermissible grounds. Cases such as this are governed by the rule of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In that case, Doyle, a non-tenured teacher, had challenged the school board's decision to terminate his employment, contending that the termination was based on his exercise of constitutionally protected First Amendment rights. The district court held Doyle's termination unconstitutional and the court of appeals affirmed. The Supreme Court held that the plaintiff first must show that the constitutionally protected behavior was a "substantial ... or ... motivating factor" in the dismissal; and if he does so, the burden shifts to the employer to show that absent the constitutionally protected conduct the employer would have arrived at the same decision. 429 U.S. at 287, 97 S.Ct. at 576.

■ If any of Mrs. Montgomery's actions were constitutionally protected, and if it could be established that she was indeed let go as a result of these actions, she may have been able to make out a case for the jury or, at least, to avoid a directed verdict. However, no specific activities of Mrs. Montgomery's—in her TSTA or any other public capacity—were shown at trial. Likewise, her expressed views on matters of public concern were never mentioned. Moreover, she was unable to point to any one Board member or to specific retaliatory action of the Board tending to suggest retaliation for her activities or views. It appears that the Board deviated from its own policies by condoning fewer teacher evaluations in the year 1982–83; in its han-

dling of certain faculty representative elections; and by relying strictly on teacher evaluations when making nonrenewal decisions after the rollback. However, these acts, though perhaps arguably unfair, cannot give rise to a claim of improper termination where a non-tenured teacher is involved. A non-tenured teacher has no constitutional right to a statement of reasons or to a hearing when let go. *Board of Regents v. Roth*, 408 U.S. 564, 569, 578, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Moreover, Mr. Holt's corroborated testimony of his ostensibly unbiased efforts to assist Mrs. Montgomery with re-employment tends to contradict any claim of retaliation or of impermissibly unfair treatment.

■ Mrs. Montgomery testified that after she was nonrenewed Mr. Holt invited her back on condition that she drop her lawsuit. However improper this conduct may have been, it appears that he did in fact recommend her. The question then became moot because the Board, by a tie vote, rejected his recommendation. There may have been questionable conduct or biased feelings motivating the Board, but they were only hinted at and no evidence of Board misconduct was presented to the jury. Similarly, Robert Turner, one of Mrs. Montgomery's witnesses, expressed the opinion that Mrs. Montgomery "was nonrenewed because of her activities at TSTA, and because of her husband's activities in the rollback...." He also had a "queasy feeling" about the manner and outcome of the hearing Mrs. Montgomery received at the hands of the Board. Although he related comments by one Board member, a Mr. Tidwell, that those teachers who supported rollback should be first fired, there was neither testimonial nor other evidence that the Board shared this view or relied on such views in reaching its decisions.

The standard for determining whether a motion for directed verdict should be granted or denied is the same for the trial court as for the reviewing court. *Boeing Co. v. Shipman*, 411 F.2d 365, 367, n. 1 (5th Cir. 1969).

[I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

*Id.* at 374.

To create a jury question, however, the plaintiff must first discharge a burden of production sufficient to create in the minds of reasonable people her side of a conflict in substantial evidence. *Id.* at 375. "The mere statement of plaintiff's belief does not support a reasonable inference [sufficient to meet this burden]." *See Herron v. Maryland Casualty Co,* 347 F.2d 357, 358 (5th Cir.1965). Such a conflict in substantial evidence being created, the court must present the question to the jury. *Boeing,* at 375; *Herron,* at 358. However, the nonmovant (here, the plaintiff) must be given the benefit of every favorable inference; and the trial judge may not usurp the fact-finding role of the ·jury by determining credibility, weighing the evidence, or making factual choices. *Hindman v. City of Paris, Texas,* 746 F.2d 1063, 1069 (5th Cir. 1984); *Branch v. Chevron International Oil Co.,* 681 F.2d 426, 432 (5th Cir.1982).

In the present case the district court was not faced with any such factual dispute to present to the jury; and the court did not use an improper standard. Given the only colorable constitutional claim that Mrs. Montgomery raised—that she was not renewed because of constitutionally protected TSTA activities—the district court had no choice to make: there simply was no "conflict in substantial evidence to create a jury question." *Boeing,* at 375. Mrs. Mont-gomery's brief highlights the only two bits of so-called evidence offered at trial relevant to this issue. She testified that there was no doubt in her mind that her employment was terminated because of her position as TSTA president, a naked and unsupported statement of opinion. Mr. Robert Turner testified that, once he was on the Board and began to observe more, it became his opinion that Mrs. Montgomery had been dropped because of her TSTA activities. Because no facts were presented in support of these expressions of opinion, the district court was compelled to direct a verdict for the defendants. For this was a case where "facts and inferences point[ed] so strongly and overwhelmingly in favor of one party ... that reasonable men could not arrive at a contrary verdict...." *Boeing,* at 374.

Mrs. Montgomery's use of a phrase lifted from the *Hindman* case is unhelpful to her cause. There, the court said "... the question of a witness's credibility is the purest of jury issues." *Id.* at 1068. Having said that, the court reversed the district court's grant of a directed verdict on the question of an arrest warrant's validity. The difference, of course, is that there were facts in *Hindman* to create a conflict in substantial evidence. Mrs. Montgomery, on the other hand, failed to offer any; indeed, the facts shown by Appendix A tend to refute her views. As this Court said in *Holcomb v. Cessna,* 439 F.2d 1150 (5th Cir.1971), "... evidence, in order to warrant submission to a jury, must present something more than a theory which will permit speculation and it must be something more than a mere scintilla." *Id.* at 1157 (citations omitted). This was not.

AFFIRMED.

### Appendix A

Table of Probationary Teachers Non-renewed, evaluation scores and TSTA affiliation.

| NAME | TSTA Member | Evaluation Score, Feb. 83· | Renewed | Remarks |
|---|---|---|---|---|
| McCREARY | Yes | 8.048 | Yes | |
| MILTON | Yes | 7.667 | No | no certification |
| JOLLY | Yes | 7.333 | Yes | |
| HARRELSON | Yes | 7.318 | No | refused offer |

| | | | | |
|---|---|---|---|---|
| CANNON | No | 7.191 | Yes | |
| GEARHEAART | No | 7.191 | Yes | |
| MORTON | Yes | 7.095 | Yes | |
| BARNES | No | 6.952 | Yes | |
| CARPENTER | No | 6.952 | No | |
| STEWART | Yes | 6.857 | No | secretary |
| THOMAS | ? | 6.500 | No | special education |
| BENNETT | ? | 6.455 | No | teachers |
| MONTGOMERY | Yes | 6.409 | No | |
| WIEDMAN | Yes | 6.333 | No | librarian |
| TOWNSEND | Yes | 6.136 | No | |
| CHUBB | No | 6.000 | No | |

Source: D. Ex. 8; R.3, 167–73.