NORTH MISSISSIPPI COMMUNICATIONS, INC., et al., Plaintiffs–Appellants,

v.

Douglas W. JONES, et al., Defendants,

De Soto County Board of Supervisors, et al., Defendants–Appellees.

No. 88–4262.

United States Court of Appeals, Fifth Circuit.

June 12, 1989.

C. Wm. Denton, David J. Cocke, Memphis, Tenn., for plaintiffs-appellants.

Robert J. Kelly, Ann H. Lamar, Hernando, Miss., for defendants-appellees.

Before GOLDBERG, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this first amendment civil rights case, the DeSoto County Board of Supervisors is alleged to have withheld county advertising from a local paper in retaliation for the paper's publication of editorials and news stories critical of the board. The district court decided that the facts on each side weighed about evenly, and held that the plaintiffs had not carried their burden of proving their claim. We are asked to consider whether the burden shifting analysis set forward in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), should be applied in this case, and, since it was not raised below, whether the failure to apply that analysis would result in a miscarriage of justice. We hold that the *Mt. Healthy* burden-shifting analysis should be applied in the context of this case, vacate the judgment below, and remand for further proceedings.

I

The *North Mississippi Times* is a weekly newspaper with its primary circulation in DeSoto County, Mississippi. On December 31, 1981, North Mississippi Communications, Inc. ("NMCI"), the owner of the *Times*, Pam Ivy, the *Times*' editor, and Charles Ivy, a shareholder of NMCI, filed a complaint against the editor and publisher of the *DeSoto Tribune*, the DeSoto Board of Supervisors, and various Hernando Bank officials, alleging that they had conspired to drive the *Times* out of business in viola-

tion of the antitrust laws and the first amendment. By order of February 20, 1985, at the close of the plaintiffs' evidence, the district court granted the defendants a directed verdict on all claims.

When the plaintiffs appealed to this court, we affirmed the dismissal of the antitrust claims, but remanded the section 1983 claims for further proceedings. *See North Mississippi Communications, Inc. v. Jones*, 792 F.2d 1330, 1337 (5th Cir.1986).

On remand, the section 1983 claims proceeded to bench trial. The trial actually began with presentation of the defense, since the plaintiffs' evidence had been heard three years earlier in the first trial. After the court heard additional oral argument, it dismissed the section 1983 claim with prejudice. 681 F.Supp. 1185. From the judgment that followed the plaintiffs now appeal.

## II

In 1975, a company controlled by Ross Franks, a DeSoto County attorney, purchased a controlling interest in North Mississippi Communications, Inc. ("NMCI"), the owner of the *Times*. Pam Ivy was hired as the paper's editor and was made a shareholder of NMCI.

Beginning in 1975, the *Times* published articles and letters about the questionable conduct of the DeSoto County Board of Supervisors. In 1976 both the *Times* and the *Olive Branch Tribune*, a second DeSoto County weekly newspaper with a much smaller circulation (later renamed the *DeSoto County Tribune*), both bid for the right to publish county board proceedings and legal notices. After an initial bidding process, for reasons not entirely clear from the record a rebidding process was held, with more elaborate procedures. Then, for the first time, the Board of Supervisors required that the bidders submit their circulation lists for review. The lists were to be broken down by supervisor district and mailing addresses. Pam Ivy testified that these requirements were contrived to harass her, because the circulation of the *Times* was much greater than that of the *Tribune* and the supervisor districts lists

were difficult to formulate. The *Times* underbid the *Tribune* for publication of the board proceedings, bidding zero dollars, and made the same bid as the *Tribune* for legal notices. As a result of the bidding, the *Times* won the bid for publication of board proceedings, but the board determined that it would, at its discretion, place legal notices wherever it wished. According to Ivy, before this occasion, the board proceedings and legal notices had been a package deal, and it had been her impression that if the *Times* won the bid on the board proceedings it would also win the better paying business of printing the legal notices.

In April 1976, the *Times* brought suit in state court to enjoin the Board of Supervisors from publishing any county notices in the *Tribune*, alleging that the *Tribune* did not have a large enough circulation to qualify for publishing legal notices. The state court rejected the *Times'* claim on May 27, 1976, ruling that the requirement of "general circulation" for the publication of legal notices did not relate to the number of subscribers, but rather to the general nature of the news content.

There was testimony at trial before the district court in 1985 that while the *Times* was considering appeal of the Chancellor's ruling, Ivy was visited by three board supervisors who attempted to persuade her not to appeal. She was told that an appeal would jeopardize the county's $2 million bond issue, which had been published in the *Tribune* and might then have to be readvertised. Ivy testified that the suggestion was made to her that the supervisors wished to publish the county's advertisements on controversial matters in the *Tribune* precisely because of its low circulation. She also testified that at the same meeting with supervisors Renfro, Riley and Wallace, she was told that if she avoided making difficulties, she would get her share of legal notices. Ivy did not appeal.

The district court found that in 1976 the *Times* and the *Tribune* received approximately the same number of legal notices. Ivy put on evidence, however, that in 1977 the *Times* had received forty-one notices

through June 30 and none thereafter, while the *Tribune* received seventy-three in the first half of 1977 and one hundred thirteen more in the second half. In 1978, the *Times* received a total of fourteen legal notices; the *Tribune* received two hundred ninety-one. Both papers were qualified to run legal notices at all the times at issue. Ivy also provided testimony cataloging the articles and editorials published by the *Times* in 1976 and 1977 that were critical of the board.

Ivy additionally testified that after she had sent her advertising representatives to every business in town, she received word that she should no longer send representatives to one of her commercial advertisers, a Mrs. Garrett, because Floyd Robertson, one of the board supervisors, had told Mrs. Garrett that if she advertised in the *Times* the board would no longer do county business with her. When Ivy confronted one of the supervisors, James Earl Riley, about the incident, he indicated to her that if she would "straighten up" he might be able to help her, but otherwise it would merely be her word against Robertson's.

The district court held that while there was "a possibility that the Board wished to retaliate against the *Times* for its editorial positions," "other reasons for favoring the Tribune" appeared "just as probable," and the plaintiffs had failed to show by a preponderance of the evidence that they had been deprived of their first amendment rights.

### III

On appeal, the specific issues raised by the plaintiff are (1) whether the fact that the district court did not apply the *Mt. Healthy* burden-shifting analysis necessitates reversal of the court's order; and (2) whether the court's finding that the country's shift of county advertising from the *Times* to the *Tribune* was as likely to have been for legitimate business reasons as for any impermissible motivation, was clearly erroneous. Because we resolve the former issue in the appellants' favor, we need not reach the latter issue.

### A.

At the outset we must address the threshold inquiry of whether the issue of the applicability of *Mt. Healthy* is properly before this court on appeal. *Mt. Healthy* was not raised by either party before the district court or by the district court *sua sponte*, and has been mentioned for the first time on appeal.

*Mt. Healthy*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), concerned the refusal to re-employ an untenured public school teacher. The teacher claimed that he had been rejected for exercising his free-speech rights under the first amendment. The district court found that the teacher's exercise of his first amendment rights had been a substantial factor in the school board's decision not to rehire him. Although there were also other factors that would have justified a decision by the board not to rehire him, the district court nevertheless ordered that the teacher be reinstated with back pay. The court of appeals affirmed. The Supreme Court, in remanding, observed that "[a] rule of causation which focuses solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the constitutionally protected conduct than he would have occupied had he done nothing." Consequently, the Court devised a burden-shifting rule under which the plaintiff must first show by a preponderance of the evidence that his conduct was constitutionally protected and that his conduct was a substantial or motivating factor in the defendant's decision. If the plaintiff carries that burden, then the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision even in the absence of the protected conduct. The Court vacated and remanded the case for a determination whether the board of education had shown by a preponderance of the evidence that it would have reached the same decision had not the teacher exercised his first amendment rights.

In *Matter of HECI Exploration Co.*, 862 F.2d 513, 518 & n. 7 (5th Cir.1988), we

reiterated the principle we previously stated in *United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532, 537–38 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988), that we will not address an issue raised for the first time on appeal unless it is a purely legal issue and our refusal to consider it would result in a miscarriage of justice.

■ Whether the *Mt. Healthy* analysis fashioned in the employment discharge context should be applicable as a substantive matter in the context of this case presents a purely legal question. This circuit has uniformly applied the *Mt. Healthy* test, but almost exclusively in retaliatory discharge cases. *See, e.g., Robinson v. Boyer*, 825 F.2d 64, 68 (5th Cir.1987); *Montgomery v. Trinity Independent School District*, 809 F.2d 1058, 1061 (5th Cir.1987); *Avery v. Homewood City Board of Education*, 674 F.2d 337, 340 (5th Cir.1982), *cert. denied*, 461 U.S. 943, 103 S.Ct. 2119, 77 L.Ed.2d 1300 (1983); *Lindsey v. Mississippi Research and Development Center*, 652 F.2d 488, 492 (5th Cir.1981); *cf. Dunham v. Brock*, 794 F.2d 1037, 1039–40 & n. 2 (5th Cir.1986) (declining to decide whether the *Mt. Healthy* burden shifting rule applies in retaliatory-discharge cases under the Energy Reorganization Act). We have not yet in this circuit applied the test in a context involving the withholding of public patronage by a government entity in retaliation for critical media coverage of the government entity's conduct. However, we see no reason why the *Mt. Healthy* test should not apply as a substantive matter to the distinct but analogous facts of this case.

■ The facts here parallel those of a retaliatory discharge from employment case, in the sense that it is alleged that the defendants refused to employ the plaintiffs to provide services in retaliation for their having exercised their constitutional rights. It is also clearly a mixed motive case because the defendants, while acknowledging that the plaintiffs engaged in constitutionally protected conduct, assert that there were other legitimate grounds that motivated them to provide less business to the *Times* than they had previously. It is true that the district court did not expressly find that the plaintiffs had proved that the exercise of their first amendment rights was a substantial motivating factor in the board of supervisors' denial of advertising to the *Times*. The court, however, had no opportunity to do so because none of the parties had suggested that the *Mt. Healthy* analysis applied. In any event, we would find any other conclusion clearly erroneous on the facts of this case in which such substantial evidence was presented in terms of timing, hostility, and even admissions that relate to motivation for the defendants' conduct. Indeed, we are persuaded that it is strongly suggested by the district court's observations on the evidence, e.g., that some of the supervisors were in fact hostile because of the editorials, that it thought of the case as one of mixed motives. Accordingly, we consider this to be a mixed-motives case in which the *Mt. Healthy* analysis is appropriate.[1]

### B.

■ Having concluded that the issue of *Mt. Healthy*'s applicability is one of law, and having held that the *Mt. Healthy* analysis is appropriate in the context of this case, we now must ask whether our

---

1. We do not read the district court's opinion in the same way that Judge Reavley, in dissent, reads it. Although the district court made no explicit finding that the plaintiffs had shown that retaliation was a substantial motivating factor, the court also did *not* find that the plaintiffs had failed to prove that retaliation was a motivating factor.

The district court found only that it was "just as likely" that business reasons motivated the board, as that retaliation was its motive. The motivating factor inquiry, as described in *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is whether, if the employer had been asked at the time of its decision what its reasons were, and gave a truthful response, *one* of those reasons would be the impermissible motive. —— U.S. at ——, 109 S.Ct. at 1789–91. This is enough to shift the burden of proof to the defendant. From the record we believe that the plaintiffs' evidence satisfied this inquiry. If we were convinced that the district court had made a finding of fact as the dissent notes, and that finding was supported by the evidence, then this would be a different case in our view as well.

refusal to review the district court's decision in this case in the light of *Mt. Healthy* would result in a miscarriage of justice. We believe that it would.

The district court in this case before us expressly noted that "the record shows the Times to have received the lesser amount of the county advertising business during the four years of the defendant Board's tenure—only approximately 25%." The court found that, "contrary to the testimony of some of the individual supervisors, some of the supervisors did feel anger toward the editor of the Times for the highly critical stories and editorials published about them." Although the district court stated that the plaintiffs had made out a prima facie case of a constitutional violation in their case in chief, it concluded that "the rebuttal evidence of the Board was *just as persuasive* that other legitimate reasons existed for favoring the Tribune over the Times" (emphasis added). It went on to note that the *Times'* notice to the board that it no longer would publish monthly board proceedings at no cost, as agreed, "*could* easily have been perceived by the Board as evidence of unreliability" which would "justify a caution and perhaps a preference by the Board," and stated that such a business experience "is *just as likely* a reason [for the board's placing more of its discretionary legal notices in the *Tribune* than in the *Times*] as the claim of the plaintiff that the Tribune was favored in order to punish the Times for its criticism of the Board" (emphasis added).

▮ Under the *Mt. Healthy*, analysis, once a plaintiff has demonstrated that an impermissible motive played a motivating part in his adverse treatment, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision in the absence of the protected conduct. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. *See also Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (affirming the preponderance of the evidence standard in the Title VII context, against a challenge that the "clear and convincing evidence" standard should govern a defendant's bur-

den of proof). It is plain from the district court opinion that no preponderance finding was ever made. The Supreme Court in *Price Waterhouse* recently stated in strong language that the mere assertion or demonstration that legitimate reasons existed for adverse action is not enough to satisfy the employer's burden of proof:

> [P]roving that the same decision would have been justified ... is not the same as proving that the same decision would have been made.... An employer may not, in other words, prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision.

—— U.S. at ——, 109 S.Ct. at 1791 (citations omitted).

Viewing the record as a whole, we see little evidence that there was a direct connection between the *Times'* decisions in 1976 and 1978 to discontinue carrying the county board proceedings it had been publishing at no expense to the county, and the board's direction of the bulk of its legal notice business to the *Tribune*.

The plaintiffs' allegations are serious, and they have gone to great lengths to prove that DeSoto County officers have exercised their authority to put them out of business for exercising their constitutional rights. They have adduced significant and impressive evidence to support this contention. Yet the plaintiffs have never been given an opportunity to have the evidence reviewed under the proper analysis, favorable to them, as set forth by the Supreme Court in *Mt. Healthy*. We believe that a miscarriage of justice would result from denying the plaintiffs such an opportunity since the district court obviously thought the case virtually balanced, and ruled for the defendants *not* because the evidence weighed in their favor, but because under the traditional burden of proof, the plaintiffs had not prevailed by a preponderance of the evidence. That such a view of the case may have worked an injustice is particularly true now that the Supreme Court has reaffirmed that the applicable burden

of proof upon the defendant in a case such as this is preponderance of the evidence, a burden which the defendants in this case may not have satisfied. However, because we cannot tell from the district court's opinion what conclusion the court would have reached had it applied the *Mt. Healthy* analysis to the facts of this case, *see Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576, we remand this case to the district court for further findings consistent with *Mt. Healthy* and *Price Waterhouse*. In so doing, we pass no judgment on what the ultimate conclusion of the district court should be.

## IV

For the foregoing reasons, the decision of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

REAVLEY, Circuit Judge, dissenting:

I read the district court to say that the plaintiffs failed to prove that retaliation for their exercise of First Amendment rights was a substantial motivating factor in the Board's denial of advertising. The majority reads the district court differently. This court should then call on the district judge upon remand to resolve this question first. Instead, we are contributing to the confusion by telling the district judge that this is a mixed motives case.

If the district court finds, as I believe it has, that plaintiffs failed to prove by a preponderance of the evidence that retaliation was a substantial motivating factor in the Board's decision, that view of the record is warranted. To be sure, there is evidence that Board members disliked the editor of the newspaper, but the unreliability and lack of cooperation by the plaintiff newspaper gave the Board legitimate cause to publish more of its legal notices in the Tribune. I do not reach *Mount Healthy* because, under my view of the district court's findings, this is not a mixed motives case. I would affirm.