JOHNSON, Circuit Judge,
dissenting:
This case turns on the first Scindia exception. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). Under that exception, a shipowner can be held liable if the shipowner *1250 “fails to warn on turning over the ship of hidden defects of which he should have know.” Pimental v. LTD Canadian Pac. Bul, 965 F.2d 13, 15 (5th Cir.1992). In the present case, the jury was instructed that in order for Greenwood to prevail, he must prove by a preponderance of the evidence that the defect, if any, was hidden and not obvious to a reasonably competent stevedore. When the jury returned its verdict, it found that the Shipowners were liable for Greenwood’s injury. The majority reverses and renders, however, because it concludes that insufficient evidence exists to indicate that the defect was “hidden.” In light of the substantial evidence in the record. that a defect did exist and that such defect was unobservable and unknown to the stevedore before that time that Greenwood was injured, this conclusion is inexplicable.
In holding that insufficient evidence of a hidden defect exists, the majority relies entirely on the testimony of the crane operator at the time of the accident, Kenneth Logue. He testified that as soon as he began operating the crane he became aware that the crane was “a little jerky” and that when he put the crane in neutral, “it would continuously kept [sic] slewing for a little ways.” Myopically clinging to this testimony, the majority concludes that the defect was open and obvious.[1]
Logue’s testimony, however, was seriously challenged at trial. In particular, the Shipowners offered evidence that the defect in crane number four was not noticed by any other crew members. Wayne O’Neal, a highly experience crane operator with a gold star rating, operated crane number four from 8:00 a.m. to 9:00 a.m. He testified that he did not notice any problems with the crane. O’Neal’s testimony was substantiated by both the gang foreman, Quincy Guilford, and the walking foreman, Butch Hinman, who testified that they were aware of no problems with the crane during the relevant time period.
Additionally, four members of Greenwood’s work gang, three of whom had experience operating cranes, testified as to their observations of the number four crane. All of these individuals observed the accident and the functioning of the crane before Greenwood was hurt. Based on these observations, the witnesses all testified that they were not able to visually detect any defect in the crane. This was also the testimony of the walking foreman, the gang foreman, and the ship’s chief engineer. All three of these individuals had also observed the crane after work began and before the accident.
Defense counsel further attacked Logue’s testimony by contending that no defect existed. Instead, the Shipowners claimed at trial that it was the negligence of Logue that caused the accident. Accordingly, defense counsel argued that Logue’s testimony was either a falsification or a rationalization on Logue’s part to shift the blame away from himself.[2]
*1251 Lending support to the argument that Lo-gue’s testimony was a post hoc attempt to shift the blame is the testimony of the gang foreman, Guilford. Logue claimed that as soon as he got off the crane at 8:00 a.m., he reported the problems in the crane to Guil-ford. However, Guilford testified that he had no memory of any such report. Moreover, he testified that if Logue had made such a report to him, he would have immediately informed Hinman, the walking foreman. Hinman, in turn, testified that no one had reported any problems to him. From this evidence, a jury could easily conclude that no such report had been made.
The majority attempts to discredit all the evidence that contradicted Logue’s testimony by claiming that the jury’s verdict indicates that the jury believed Logue and no one else. The majority reaches this conclusion by contending that unless the jury believed Logue, they would have been unable to to find that crane number four was defective. I disagree. Even without using Logue’s testimony, the jury could have found that crane number four was defective. Greenwood presented at trial other evidence of the defect in the form of maintenance records from the ship. These records state that the slewing brake on crane four was in “doubt” or “slight doubt” and that repairs had been made to the slewing brake with parts that were not recommended and that did not belong in the crane. From this evidence alone, the jury could have clearly deduced that crane number four was defective.
All the above evidence militates toward a finding that the defect was hidden; however, the majority simply ignores it. In spite of all of the evidence and the arguments questioning Logue’s testimony, the majority has chosen to believe Logue completely. What the majority has done in this case is to credit the testimony it likes from Logue and to discount all the evidence to the contrary. However, judging the credibility and believability of witnesses is the province of the jury. See Boeing Co. v. Shipman, 411 F.2d 365, 375 (5th Cir. 1969) (en banc), overruled on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc). We have repeatedly stated that it is not this court’s job to reweigh the evidence and second-guess the jury. See, e.g., Davis v. Odeco, Inc., 18 F.3d 1237, 1248 (5th Cir. 1994); Davis v. First Nat’l Bank, 976 F.2d 944, 950 (5th Cir. 1993). It is axiomatic that a jury is in an infinitely better position to judge the credibility of witnesses presented at trial. On appeal, we are limited to reviewing a cold and lifeless record, while a jury is able to physically observe the witnesses’ demeanor and reactions as they testify. Put simply, “it is the function of the jury as the traditional finder of the facts, and not he Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.” Boeing, 411 F.2d at 375; see also Hindman v. City of Paris, 746 F.2d 1063, 1068 (5th Cir. 1984).
The role of this court in reviewing the sufficiency of the evidence is to determine whether, after reviewing all the evidence in a light most favorable to the party opposing a motion for judgment as a matter of law, substantial evidence exists in the record to support the jury’s verdict such that “reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions.” Maxey v. Freightliner Corp., *1252 665 F.2d 1367, 1371 (5th Cir. 1982) (en banc). If so, the jury’s verdict must be upheld. See id. Manifestly, the testimony of O’Neal, the crane operator, that he noticed no defects, the testimony of seven witnesses who stated that they were unable to visually detect any defects, and the testimony of the foremen who stated that no one reported any problems to them is sufficient for a reasonable jury to conclude that this defect wad hidden and unknown to the stevedore. While the majority should be looking to see if substantial evidence exists to support the jury, it instead takes on the role of a fact finder. The majority in this case picks and chooses the evidence that it feels supports its theory of the case, while refusing to recognize the existence of credible evidence sufficient to uphold the jury’s verdict.

CONCLUSION

There is clearly substantial evidence in the record such that a reasonable jury could conclude that the defect in crane number four was not open and obvious to the stevedore. The majority’s conclusion to the contrary, based on its unwavering faith in the testimony of the crane operator to the exclusion of all other evidence, is difficult to comprehend. Accordingly, I respectfully dissent.

. In an attempt to find additional evidence to support its conclusion that the defect to the crane was open and obvious, the majority looks to the testimony of George Polinard. This individual testified that he observed all of the cranes and that they were not smooth at all, hut rather they were jerky in their motions. However, Poli-nard never operated any of the cranes, and he worked on a different crane than Greenwood. Moreover, he did not observe the cranes on the day that Greenwood was hurt. Rather, Poli-nard's observations were made the following day. Even so, the majority chooses to cite this testimony and glosses over the testimony of the seven other witnesses who saw the accident and observed the particular crane involved at the relevant time.

. In the Shipowners’ opening statement, counsel argued as follows:
I think that you will see evidence from coworkers form this particular gang of stevedores, these particular longshoremen, that will demonstrate to you that no one knew of any problem associated with these cranes, no one said there was any kind of problem with the crane’s operation leading up until this accident. It’s only after all this took place that we began to hear from Mr. Logue, "Oh, there was a problem with the crane that caused this to happen.”
Then, in closing arguments, defense counsel argued that the equipment was safe and that "what we’re dealing with here is operator .error, a problem on the part of Mr. Logue.” Further, defense counsel stated that as he saw it, the bottom line
in terms of whether there, is a truly unreasonably dangerous condition on this crane comes down to Mr. Logue. But I don't take him in the abstract. I take him in the context of how we came to him in this case. He’s the guy that’s operating the crane at the time that Mr. Greenwood gets hurt____ Well, you know, the *1251 problem I’ve got with Logue’s testimony is — is I see him as — as carrying around a lot of guilt. I see him as being in a situation where he’s got to tell the guy something. We heard him say he told the guy he was sorry. And I think what he's doing here is he's telling us, “Look, I'm really sorry, but I've got to come up with something. I can't just tell the guy that I messed up. I can't tell the guy that it's my fault. I got to blame some inanimate object. I got to blame some foreigner, someplace that, you know, can't come in and answer for himself.”
On appeal, however, the Shipowners change their story and claim that Logue's testimony con-ceming the defect should be believed. The majority alleges that judicial estoppel precludes Greenwood from relying on Logue's testimony to receive his judgment at trial and then turning around on appeal and repudiating that very testimony in an attempt to retain the judgment. See 111 F.3d at 1248. Notably though, the Shipowners are essentially doing the same thing. At trial, the Shipowners attempted to discredit Logue's testimony at every turn. Now on appeal, the Shipowners claim that Logue’s testimony is correct and ask this court to disregard all of the evidence and testimony that the Shipowners provided at trial contradicting Logue.