28 F.3d 1362
 Gloria Turner WILKES, Plaintiff-Appellee,
v.
Legrand YOUNG, individually and as agent and in his official
capacity of the County of Florence; The County of
Florence, South Carolina, Defendants-Appellants.
 No. 92-2177.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1993.
Decided July 12, 1994.
 
 ARGUED: William Reynolds Williams, Willcox, McLeod, Buyck, Baker & Williams, Florence, SC, for appellants. Robert Bryan Harwell, Harwell, Ballenger & DeBerry, Florence, SC, for appellee.
 Before PHILLIPS, LUTTIG, and WILLIAMS, Circuit Judges.
 Reversed by published opinion. Judge LUTTIG wrote the majority opinion, in which Judge WILLIAMS joined. Judge PHILLIPS wrote a dissenting opinion.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Gloria Wilkes sued the County of Florence, South Carolina and its Director of Buildings and Grounds, LeGrand Young, in federal district court, alleging a cause of action under 42 U.S.C. Sec. 1983 and seven supplemental causes under South Carolina tort law, all arising from her arrest for failing to appear in court as required by a parking summons. A jury returned a verdict for Wilkes on her section 1983 claim and one of her state law claims, awarding damages in the sum of $40,000.00 against Young and Florence County, and further awarding punitive damages of $7,500.00 against Young alone. Young and Florence County now appeal the judgment against them. Finding no violation of Wilkes' federal rights, and also finding that Wilkes failed to establish the elements of the tort of intentional infliction of emotional distress, we reverse the judgment below.
 
 I.
 
 2
 On October 17, 1989, Gloria Wilkes' daughter parked Wilkes' car illegally in the parking lot of the Florence County Public Services Building. The car was ticketed with a summons requiring the owner of the car--Wilkes--to appear in magistrate court at 10:00 a.m. on November 10, 1989. When Wilkes' daughter told her about the ticket, Wilkes simply instructed her daughter to "check into it," J.A. at 34, and apparently never herself read the ticket. Neither Wilkes nor her daughter appeared in magistrate court on the specified date.
 
 
 3
 LeGrand Young reported to magistrate court on November 10, 1989, to testify regarding the ticket issued to Wilkes. In response to Wilkes' failure to appear in court, the magistrate instructed Young to complete the necessary paperwork. Young approached the magistrate's secretary and told her that Wilkes had not appeared in court and that he had been told to fill out the necessary papers. The secretary told Young that she did not have time to type out an affidavit but, if he signed the form, she would fill it out with the simple information that he had just provided her. The affidavit signed by Young and completed by the secretary reads in relevant part that, on November 10, 1989, Wilkes
 
 
 4
 fail[ed] to report to Magistrate Court as required by a Summons that she received on [October 17, 1989] for Parking in A Fire Lane, thus violating [South Carolina] Code [Sec.] 17-15-90.[1] Incident happened in the [p]arking [l]ot of the Florence County Public Service B[uilding].
 
 
 5
 J.A. at 116. On the strength of this affidavit, a warrant for Wilkes' arrest was issued. A deputy sheriff subsequently met Wilkes at her place of employment around lunchtime, and explained that he had come because of her failure to appear as required by the ticket. Wilkes admitted knowing that her daughter had received the ticket, and agreed to drive down to the magistrate's office to resolve the matter. The magistrate was not present, however, and Wilkes was detained for three to four hours, at which point bond was posted and Wilkes was released. Wilkes' bond was ultimately returned to her and the failure to appear charge dismissed.
 
 
 6
 Wilkes subsequently brought this action against Young and the County of Florence in federal district court, contending that both were liable to her under 42 U.S.C. Sec. 1983. Wilkes also alleged seven supplemental state tort claims, of which all but three were dismissed by the court. After a trial, the jury rendered a verdict for Wilkes on her section 1983 cause of action and on her state law cause of action for intentional infliction of emotional distress. The jury awarded Wilkes damages in the sum of $40,000.00 against both Young and Florence County, and additionally imposed punitive damages in the amount of $7,500.00 against Young alone. The district court denied the defendants' motions for Judgment Notwithstanding a Verdict and a new trial, and entered judgment for Wilkes in accordance with the jury's verdict. Young and Florence County appeal the judgment against them.
 
 II.
 A.
 
 7
 Appellants first argue that the jury's verdict imposing section 1983 liability cannot stand because Wilkes failed to prove any violation of her constitutional rights. We agree.
 
 
 8
 Wilkes contends, as she did below, that Young violated her Fourth Amendment rights by submitting a false affidavit to secure a warrant for her arrest.[2] Evidently assuming that Young's sworn statement that Wilkes "received" the ticket could only mean that she actually took physical possession of it, Wilkes argues that for Young to have made this statement when in fact he did not know whether Wilkes had personally received the ticket constituted "blatant misconduct" that violated her Fourth Amendment rights. We are not persuaded.
 
 
 9
 As an initial matter, we doubt that any reasonable juror could find that Young lied by stating that Wilkes "received" the parking ticket, since, as a matter of common sense, the statement that Wilkes "received" a ticket in fact means nothing more or less than that the ticket was placed on the windshield of her car, a fact which no one disputes. See, e.g., United States v. Ventresca, 380 U.S. 102, 108-09, 85 S.Ct. 741, 745-46, 13 L.Ed.2d 684 (1965) (warrant affidavits to be construed in "commonsense and realistic" way, not "grudgingly" or "hypertechnically"). More importantly, even conceding that reasonable jurors could read Young's statement as stating that Wilkes herself physically received the ticket, and therefore could find that the statement was a misrepresentation (since Young did not at the time know, as we do now, that Wilkes actually had notice of the ticket), Young still committed no Fourth Amendment violation. It is well-established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is "necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); see, e.g., United States v. George, 971 F.2d 1113, 1123 at n. 15 (4th Cir.1992). Here, probable cause for Wilkes' arrest plainly existed even in the absence of Young's purported misrepresentation; thus, even accepting Young's statement as a lie, it could not possibly have constituted a Fourth Amendment violation because the material falsely represented was altogether unnecessary to the magistrate's finding of probable cause.
 
 
 10
 The affidavit before the magistrate presented him with the facts that Wilkes' car had been parked illegally, that Wilkes had "received" a summons for this parking violation, that the summons directed her to appear in court and that Wilkes failed to appear in court as required. Even if it is assumed that Young, by using the word "received," intended deliberately to mislead the magistrate into believing that Wilkes received the summons in person, rather than on her car, his statement plainly conveys, even without the possible inference that she personally received the summons, the uncontroverted fact that the ticket had been placed on Wilkes' car. See Franks, 438 U.S. at 156, 98 S.Ct. at 2676 (false material must be "set to one side"). This information, together with the other uncontroverted facts set forth in the affidavit, easily established probable cause that Wilkes failed to appear as required by the parking summons.
 
 
 11
 Probable cause only requires enough evidence " 'to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) (footnote omitted)). That the ticket requiring Wilkes to appear in court was placed on her car obviously provides more than ample evidence to establish a reasonable belief, if not a legal certainty, that Wilkes had notice of her obligation to appear. Cf. Saukstelis v. City of Chicago, 932 F.2d 1171, 1173 (7th Cir.1991) ("parking ticket is itself a notice"); Morris v. City of New York Parking Violations Bureau, 527 F.Supp. 724, 726 (S.D.N.Y.1981) (parking summons placed on car but alleged never to have been received provides prior notice of car seizure for unpaid summonses). This information, combined with the uncontroverted fact that Wilkes did not appear, indisputably supported a reasonable belief that Wilkes failed to appear as required by the parking summons.[3] Because probable cause for Wilkes' arrest obviously existed even in the absence of Young's purported misrepresentation that Wilkes herself physically received the ticket, Young's statement was "[un]necessary to the finding of probable cause," Franks, 438 U.S. at 156, 98 S.Ct. at 2676, and, therefore, altogether immaterial for Fourth Amendment purposes. Because Wilkes proved no violation of her constitutional rights, she cannot possibly prevail on her section 1983 claim, and we accordingly reverse the imposition below of section 1983 liability.
 
 B.
 
 12
 We are equally unpersuaded that South Carolina law permitted the jury's verdict for Wilkes on her state law cause of action for intentional infliction of emotional distress.
 
 
 13
 The Supreme Court of South Carolina has clearly specified that, in order to recover for the tort of intentional infliction of emotional distress (also known as the tort of outrage), a plaintiff must prove that--
 
 
 14
 (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;
 
 
 15
 (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"
 
 
 16
 (3) the actions of the defendant caused the plaintiff's emotional distress; and
 
 
 17
 (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it."
 
 
 18
 Ford v. Hutson, 276 S.C. 157, 276 S.E.2d 776, 778 (1981) (quoting Vicnire v. Ford Motor Credit Co., 401 A.2d 148 (Me.1979) (quoting Restatement (Second) of Torts Sec. 46, Comment i, d, j)). We have no doubt that Wilkes' brief detention caused her some distress. However, even assuming that the jury could have found under Ford's third prong that Young's conduct caused this distress, Wilkes has failed altogether to establish either the state of mind, the conduct or the suffering necessary to recover for the tort of outrage.
 
 
 19
 First, Wilkes presented no evidence that Young intentionally or recklessly inflicted any harm. Allowing that the jury might have found that Young was, by signing the blank affidavit, reckless as to the affidavit's accuracy, there is no evidence whatsoever that he either knew or should have known that signing the affidavit would inflict severe emotional distress. Second, for Young, a maintenance man, to have reported to the magistrate's secretary, as instructed by the magistrate himself, that Wilkes failed to appear as required by the ticket she had received, and then, at the secretary's behest, to have signed a blank affidavit, simply does not rise to the level of conduct required under South Carolina law to establish the tort of outrage. However one characterizes Young's rather innocuous conduct, it is simply beyond the realm of reasonableness to suggest that it "was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' " or that it was " 'atrocious, and utterly intolerable in a civilized community.' " Ford, supra, 276 S.E.2d at 778 (citations omitted). Finally, Wilkes failed to adduce evidence that she suffered emotional distress severe enough to satisfy the elements of the tort of outrage. Although, like any arrest, Wilkes' rather routine three-to-four hour detention at the Florence County Sheriff's Office was surely an unpleasant experience, the suffering it caused to Wilkes cannot plausibly be described as so severe that " 'no reasonable man could be expected to endure it.' " Id.
 
 
 20
 Quite plainly, Wilkes failed to set forth facts which jurors could reasonably regard as establishing the elements of the tort of outrage. Under South Carolina law, therefore, Wilkes' outrage claim should properly have been withheld from the jury, Todd v. South Carolina Farm Bureau Mutual Insur. Co., 283 S.C. 155, 321 S.E.2d 602, 609 (Ct.App.1984), quashed on other grounds, 287 S.C. 190, 336 S.E.2d 472 (1985) (it is for court to determine in the first instance whether defendant's acts were so outrageous as to establish liability for infliction of severe distress), and we accordingly reverse the judgment for Wilkes on that count.[4]III.
 
 
 21
 For the above-stated reasons, we reverse the district court's judgment imposing section 1983 and state tort liability on both Young and the County of Florence.
 
 
 22
 REVERSED.
 
 PHILLIPS, Circuit Judge, dissenting:
 
 23
 At the core of the Fourth Amendment is the probable cause requirement that protects us all from "rash and unreasonable interferences with privacy and ... unfounded charges of crime." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). 42 U.S.C. Sec. 1983 provides a private federal right of action with civil remedies to vindicate the right secured. In this action brought under that statute, a federal jury, properly instructed on the nature of the probable cause requirement, found on sufficient evidence that a fellow citizen, Gloria Wilkes, had been arrested without probable cause and had sustained significant emotional and physical injury as a result of the incarceration that followed. It further found, again on a proper instruction as to controlling law and on sufficient evidence, that a governmental official, LeGrand Young, and the County that employed him had effectively caused the unconstitutional arrest: the official by recklessly misrepresenting facts upon which the warrant for her arrest was issued, and the County, by condoning the known practice among its employees, including Young, of which this episode was an example bound sooner or later to happen.
 
 
 24
 The panel majority in this case has now vacated the judgment entered on that jury verdict. Obviously viewing the whole of this citizen's unhappy encounter with the law as a relatively routine and consensual one with no significant harm done in any event,[1] the majority concludes that the arrest was not in fact unconstitutional--that it was based on probable cause and, though "false," was so only because of a "rather innocuous" mistake in judgment. Ante, at 1366. It therefore does not address the further questions of specific culpability of Young and the County for causing the false arrest.
 
 
 25
 I believe the majority could only reach this conclusion either by impermissibly re-examining the facts found by the jury or by misapprehending the law of probable cause as applied in this context, or both, and that in fact it has done both. I therefore dissent from the judgment which on this basis vacates Mrs. Wilkes' award of money damages and leaves her without remedy. I would instead affirm the judgment, which requires that I also discuss the basis upon which the liability of Young and the County were properly established by the jury verdict.[2]
 
 I.
 
 26
 I begin by briefly recapitulating the facts, either as undisputed or as necessarily found by the jury on evidence that was clearly sufficient, under the standard by which we properly may review its sufficiency. Doing so reveals a classic example of just the sort of recklessness and deliberate indifference by lower-level governmental officials and governmental bodies that, probably much more frequently than deliberate intent and malice and the like, has been the instrument of governmental violations of Fourth Amendment rights--most frequently those of citizens least able by position and place in society to avoid or protect themselves against it.
 
 
 27
 On November 13, 1989, in Florence, South Carolina, Gloria Wilkes, a grandmother, registered nurse, and law-abiding citizen who had never before been arrested, was arrested without warning at the nursing home where she had worked for more than 12 years, and taken to the local jail, where she was fingerprinted and photographed and then confined in the jail's "holding tank" for four hours, during which she suffered humiliation from the taunts of fellow inmates and significant physical harm resulting from the exacerbation of preexisting diabetic and coronary conditions, before her employer managed to obtain her release by posting bond.
 
 
 28
 The arrest was made under a warrant specifically charging Mrs. Wilkes with the state criminal offense, under S.C.Code Ann. Sec. 17-15-90 (Law. Co-op.1985 & Supp.1993), of willful failure to appear in Magistrate's Court following arrest and release on personal recognizance, obviously conduct not chargeable to her since she had not been earlier arrested and released on recognizance. The sole basis for the issuance of that legally erroneous warrant was an affidavit signed by an employee of the Florence County Building and Grounds Department, LeGrand Young, which stated that Mrs. Wilkes had "fail[ed] to report to Magistrate Court as required by a Summons that she received ... for Parking in A Fire Lane"--an affidavit that Young had signed in blank, permitted a secretary to complete as she saw fit, and authorized her to submit to the magistrate as his sworn testimony, without bothering to read what she had written. Not surprisingly, the affidavit, as completed by the secretary, contained several statements that were materially false or misleading, most critically the statement that Mrs. Wilkes had in fact been properly served with an official summons to appear in court.[3] Several months later, another state magistrate, apparently the one assigned to try the charges against Mrs. Wilkes, determined in the course of an informal pre-trial investigation of the charges, that the information contained in Young's affidavit had been materially false and misleading and that there was in fact no probable cause to prosecute Mrs. Wilkes for the offense charged in the warrant on which she was arrested (or, for that matter, any other criminal offense). He therefore ordered the charges against Mrs. Wilkes dropped.
 
 
 29
 Mrs. Wilkes then filed this action under 42 U.S.C. Sec. 1983 against Young and his employer, the County of Florence, alleging that they had caused her to be arrested without probable cause, in violation of her Fourth Amendment rights. The case was tried to a jury of the parties' peers, who found, under proper instructions as to which no challenge is made on this appeal, that Mrs. Wilkes had in fact been arrested without probable cause, and that Young and the County were liable for this wrong under Sec. 1983.
 
 II.
 
 30
 To recover on her Sec. 1983 claim against Young in his individual capacity, and Florence County as his employer, Mrs. Wilkes had to prove, first, that she had been "deprived of [the] right[ ] ... secured by the Constitution" not to be arrested but upon probable cause; second, that one or both of the defendants, acting under color of state law, had "subject[ed], or cause[d] [her] to be subjected," to that deprivation of right. 42 U.S.C. Sec. 1983. The jury necessarily found that she had proved both, against both defendants. The majority now concludes that, as a matter of law, the evidence was insufficient to support the jury's probable cause finding.
 
 
 31
 I believe the majority is wrong--both in its legal analysis and in its assessment of the evidence--in so concluding. In the first place it has either basically misapprehended or misapplied the standard by which we are reviewing the jury's no-probable-cause determination. We are not reviewing it as we would a trial judge's determination of probable cause in a suppression hearing, in which criminal setting it is an issue for the judge. We are reviewing it as a finding made by a jury in a civil action to recover money damages. In that setting, the Seventh Amendment requires that, if the evidence be legally sufficient, the probable cause issue is one for the jury. See McKenzie v. Lamb, 738 F.2d 1005, 1007-08 (9th Cir.1984) (Kennedy, J.); Deary v. Three Un-Named Police Officers, 746 F.2d 185, 190-92 (3d Cir.1984); Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978).[4] And where, as here, a properly-instructed jury has found that the plaintiff was in fact arrested without probable cause, we may not, under the normal review standard, set aside that finding for evidentiary insufficiency so long as the evidence adduced at trial, viewed in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, would permit a reasonable jury to reach the same conclusion. See Lester v. City of Chicago, 830 F.2d 706, 714-15 (7th Cir.1987) (applying this standard in affirming jury verdict for Sec. 1983 plaintiff on claim of arrest without probable cause); DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir.1990) (same), cert. denied, --- U.S. ----, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991); see also Stringer v. Dilger, 313 F.2d 536, 541 (10th Cir.1963) (applying same standard in reversing JNOV for defendant on Sec. 1983 claim based on arrest without probable cause); Patzig, 577 F.2d at 848 (applying same standard in reversing directed verdict for defendants on Sec. 1983 claim based on arrest without probable cause).
 
 
 32
 In this case, the jury found, after hearing Young's testimony and being properly instructed as to the legal meaning of probable cause,[5] that Mrs. Wilkes had in fact been arrested without probable cause. Under the proper review standard, the majority's conclusion that the evidence was legally insufficient to permit the jury to make that finding is simply untenable. As the trial judge instructed the jury, and the majority concedes, ante, at 1365, probable cause to arrest exists only when the facts and circumstances known at the time are sufficient to warrant a person of reasonable prudence in the belief that the suspect has committed or is committing a criminal offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142 (1964); Brinegar, 338 U.S. at 175-76, 69 S.Ct. at 1310-11. While the quantum of evidence required to establish probable cause is of course less than that required to establish guilt beyond a reasonable doubt, id. at 173, 69 S.Ct. at 1309, a "mere suspicion" that the suspect has engaged in some unspecified criminal activity is not sufficient to support a full-blown custodial arrest. Id. at 176-77, 69 S.Ct. at 1311-12. And where, as here, it is not clear that a crime has been committed at all, something more--approaching a "more probable than not" showing--is required to establish probable cause than is the case when a crime has obviously been committed and the only uncertainty is about who committed it. See, e.g., State v. Drott, 412 So.2d 984, 986 (La.1982); People v. Carrasquillo, 54 N.Y.2d 248, 445 N.Y.S.2d 97, 99-100, 429 N.E.2d 775, 778 (1981); State v. Frazier, 421 A.2d 546, 550 (R.I.1980); State v. Johnson, 363 So.2d 684, 689 (La.1978). See generally 1 W. LaFave, Search and Seizure Sec. 3.2(e), at 594-96 (2d ed.1987).
 
 
 33
 In deciding the probable cause issue here, the jury was entitled to consider only the information that was before the magistrate at the time he issued the warrant under which that arrest was made. See id. Sec. 3.2(d), at 575-76.[6] The undisputed evidence at trial established that the only information before the magistrate when he issued the warrant for Mrs. Wilkes' arrest was the affidavit of LeGrand Young. The only specific factual averments made in that affidavit were that Mrs. Wilkes had "fail[ed] to report to Magistrate Court as required by a Summons that she received on 10/17/89 for Parking in A Fire Lane ... in the Parking Lot of the Florence County Public Service Bldg." JA116. Though the majority says that this information "plainly," "easily," "obviously," and "indisputably" established probable cause to arrest Mrs. Wilkes, ante, at 1365-66, it does not identify, because it could not, the precise criminal offense or offenses for which it thinks probable cause to arrest existed. It could not do so because the facts provided in Young's affidavit--even if accepted as true, which the jury obviously did not--do not establish reasonable grounds to believe that Mrs. Wilkes committed any criminal offense recognized under South Carolina law at the time of her arrest.
 
 
 34
 As Mrs. Wilkes argued below, and the jury properly found, the facts given in Young's affidavit could not support a reasonable belief that Mrs. Wilkes had committed the offense specifically charged to her in the arrest warrant: a violation of S.C.CodeSec. 17-15-90. That provision makes it a criminal offense to "wilfully fail[ ] to appear" in court as required following arrest and release on personal recognizance. S.C.Code Ann. Sec. 17-15-90 (Law. Co-op.1985 & Supp.1993). Young's affidavit contained no facts to suggest that Mrs. Wilkes' alleged failure to appear occurred after she had been arrested and released on personal recognizance. It was therefore insufficient, as a matter of law, to establish probable cause to arrest Mrs. Wilkes for a violation of S.C.Code Sec. 17-15-90.
 
 
 35
 Obviously aware of this difficulty, the majority does not suggest that there was probable cause to arrest for the offense charged in the warrant itself. Instead, it says that the warrant's reference to Sec. 17-15-90 was a "clerical error," and that the intended offense must have been a violation of S.C.Code Sec. 56-5-730. Ante, at 1364 n. 1. This must assume--though the assumption is never stated explicitly--that an arrest made under a warrant that charges an offense for which probable cause does not exist is not unlawful so long as a post hoc search of the relevant criminal statutes can turn up some other offense for which the issuing official might properly have issued a warrant on the facts before him. The majority cites no authority to support this proposition; I believe there is none. We have previously recognized that a warrantless arrest may be upheld as against a probable cause challenge even when there is no probable cause for the offense listed by the arresting officer in the initial booking entry, if the facts before the arresting officer would have given him probable cause to arrest for some other closely-related offense. See Sevigny v. Dicksey, 846 F.2d 953, 956 n. 4 (4th Cir.1988) (as a "general rule," "the offense actually charged by the arresting officer does not limit the basis upon which the validity of his arrest may be upheld"). Accord Blanding v. State, 446 So.2d 1135, 1136 (Fla.App.1984) ("An arrest based on probable cause is not rendered unlawful because the arresting officer attaches an improper label to it"). See generally 2 LaFave, supra, Sec. 5.1(e). The rationale for this rule is obvious: even when conduct is clearly criminal, its "precise legal characterization" often involves "legal subtleties with which an arresting officer should not be required to concern himself." See Model Code of Pre-Arraignment Procedure Sec. 120.1(2), at 297 (1975). But that rationale does not apply to arrests made pursuant to warrants that charge the wrong offense, since warrants are issued by magistrates who are charged by law with the duty of making sure that the investigating officers are not ascribing the wrong legal label to particular conduct. See United States v. Evans, 574 F.2d 352, 355 n.** (6th Cir.1978) ("the question is not what the judge could do, but what, in legal effect, he did do") (emphasis in original); 2 LaFave, supra, Sec. 4.3(a), at 168 ("the Fourth Amendment ... requires more than that a valid warrant could have been issued") (emphasis in original).
 
 
 36
 Even assuming that an arrest made under a warrant charging an offense for which there is no probable cause could be upheld if there were probable cause to believe the arrestee committed some other criminal offense, the jury's finding of no probable cause here could not be set aside on that basis, for the facts given in Young's affidavit are insufficient, as a matter of law, to support a reasonable belief that Mrs. Wilkes had committed any criminal offense that was recognized by South Carolina law at the time of her arrest. There obviously was no probable cause to think that she had committed the offense suggested as a possibility by the majority, a violation of S.C.Code Sec. 56-5-730. That provision makes it a misdemeanor to "do any act forbidden [by] or to fail to perform any act required [by]" Chapter 5 of Title 56. S.C.Code Ann. Sec. 56-5-730 (Law. Co-op.1991). Nothing in Chapter 5 of Title 56, which regulates traffic on the state's highways, requires the owner of a car to report to Magistrate's Court when directed to do so by a summons issued for parking in a fire lane on municipal property. So Sec. 56-5-730 cannot be the offense for which the majority purports to find probable cause as a matter of law.[7]
 
 
 37
 Perhaps the majority means to say that the facts given in Young's affidavit were sufficient, as a matter of law, to support a reasonable belief that Mrs. Wilkes had committed the "offense" of criminal contempt of court. See Bloom v. Illinois, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968) ("Criminal contempt is a crime in the ordinary sense"). If so, it is wrong again, for the failure to comply with a summons to appear in Magistrate's Court can never constitute criminal contempt under South Carolina law. In that state, a magistrate has no authority to hold an absent defendant in criminal contempt for failure to appear, because his power to punish for contempt is limited by statute to acts of contempt committed in his presence while he is performing the duties of his office. See S.C.Code Ann.Sec. 22-3-950 (Law. Co-op.1989); 1976-77 S.C. Op. Att'y. Gen. No. 77-406 (Dec. 27, 1977).[8]
 
 
 38
 In short, at the time this warrant was issued, it was simply not a criminal offense under South Carolina law to do what Young's affidavit stated that Mrs. Wilkes had done: fail to appear before a magistrate as directed by a summons received for parking in a fire lane.[9] Thus, even if the jury had accepted everything in Young's affidavit as true--which, as explained more fully below, there is considerable reason to think it did not--it could not reasonably have come to any conclusion other than the one it did: that Mrs. Wilkes was arrested without probable cause.
 
 
 39
 Finally, even if it had been a criminal offense in South Carolina to fail to appear before a magistrate as required by a summons received for parking in a fire lane, the jury verdict here could not properly be set aside on that account. For even if on that basis Young's affidavit had been facially sufficient to establish probable cause with respect to such an offense, that would not end the inquiry. Statements in a warrant affidavit that are shown by a preponderance of the evidence to be false or misleading, and to have been made with either knowledge of their falsity or reckless disregard for their truth, must be disregarded in deciding whether the warrant is supported by probable cause. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (criminal suppression hearing); see Olson v. Tyler, 771 F.2d 277, 281 & n. 6 (7th Cir.1985) (applying Franks rule in Sec. 1983 action for arrest without probable cause); DeLoach v. Bevers, 922 F.2d 618, 621-23 (10th Cir.1990) (same), cert. denied, --- U.S. ----, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991); Hindman v. City of Paris, 746 F.2d 1063, 1067-68 (5th Cir.1984) (same).[10] In a Sec. 1983 damages action for unconstitutional arrest, whether a particular statement in a warrant affidavit is false or misleading within the meaning of Franks, and, if so, whether it was made with knowledge of its falsity or reckless disregard for its truth, are themselves subsidiary questions of fact for the jury. Id. at 1067.
 
 
 40
 The evidence in this record, viewed in the light most favorable to Mrs. Wilkes, was sufficient to permit the jury to find under the Franks rule that it must exclude from the probable cause inquiry the affidavit's allegation that Mrs. Wilkes had "received" a "summons" to appear in Magistrate's Court. There was considerable evidence that this statement, even if not literally false, was sufficiently likely to mislead the issuing magistrate to qualify as a "false or misleading statement" for purposes of Franks. See State v. Olson, 11 Kan.App.2d 485, 726 P.2d 1347, 1352 (1986) (statements which, though not literally untruthful, are materially misleading may be considered "false" under Franks ). The magistrate was very likely to interpret Young's statement as meaning that Mrs. Wilkes had received a standard official summons signed by a magistrate, and that she had been personally served with such a summons. See S.C.Code Ann. Sec. 22-3-930 (Law. Co-op.1989) (authorizing a magistrate to issue a "summons" requiring any person to appear before him to give testimony, but requiring that such a summons be "served personally"). The undisputed evidence established that neither of these things had actually happened. First, as Young himself admitted, the only notice that Mrs. Wilkes was ever given of her alleged obligation to appear in Magistrate's Court was contained in a crude homemade parking ticket left on the windshield of her car at a time when it was being operated by someone else. Though this document was captioned "summons" and directed the owner of the car to appear in Magistrate's Court at a certain time, it did not look like an official summons: it was handwritten on a piece of plain white paper, rather than being typed on a standard printed summons form, and it was signed by an employee of the County Building and Grounds Department, rather than by a judge or a police officer. Similarly, there was no evidence whatsoever that this so-called "summons" had ever been personally served upon Mrs. Wilkes. While Mrs. Wilkes admitted that she knew that her daughter had found it on her car, she also said that she herself had never seen it, and that her daughter said she had been assured--by both a deputy sheriff and someone in the magistrate's office--that it could not be a legitimate summons, because of its irregular form and manner of service. On this record, the jury could reasonably have found Young's allegation that Mrs. Wilkes had "received" a "summons" to appear in Magistrate's Court to be a false or misleading statement within the meaning of Franks. This is so because it gave the false impression not only that she had received a standard summons to appear issued by a magistrate, but also that she had been personally served with such a summons.
 
 
 41
 The evidence was also sufficient to permit the jury to find the other prerequisite for exclusion of Young's misstatement under Franks: that Young made it with at least reckless disregard for its truth. Young admitted that he signed the affidavit form in blank, that he gave the magistrate's secretary the authority to draft the statement it attributed to him as she saw fit, and that he permitted her to submit the completed form (including the misleading statement in question) to the magistrate as his sworn testimony, without even bothering to read what she had written. On this record, the jury could reasonably have found that Young acted with reckless disregard for the truth of the statements contained in the affidavit he submitted to the magistrate: swearing to the truth of a statement one has not even read is the very essence of reckless disregard for its truth.
 
 
 42
 The majority asserts that even if we disregard Young's allegation that Mrs. Wilkes had "received" a "summons," the jury's verdict still cannot stand, because the issuing magistrate had before him "other uncontroverted facts" that "easily established probable cause" to believe that she had failed to appear as required by a summons she received for parking in a fire lane. Ante, at 1365. This is plainly wrong. It is undisputed that the only information before the magistrate at the time he issued the warrant was that contained in Young's affidavit. That affidavit stated, in its entirety, that Mrs. Wilkes had
 
 
 43
 fail[ed] to report to Magistrate Court as required by a Summons that she received on 10/17/89 for Parking in A Fire Lane, thus violating SC Code of Law # 17015-90. Incident happened in the Parking Lot of the Florence County Public Service Bldg.
 
 
 44
 JA116. When the affidavit is redacted to remove the misleading assertion that Mrs. Wilkes had "received" a "summons" requiring her to report to Magistrate's Court, as Franks requires, see 438 U.S. at 156, 98 S.Ct. at 2676-77, its remaining factual allegations--that she had "fail[ed] to report to Magistrate Court ... for Parking in a Fire Lane ... in the parking lot of the Florence County Public Service Building"--are flatly insufficient to support a reasonable belief that Mrs. Wilkes had failed to appear as required by a summons she received, since they do not indicate that she ever received any sort of summons, either in person or on her car.
 
 
 45
 The majority's contrary conclusion apparently rests on the notion that Franks does not require false or misleading statements in a warrant affidavit to be altogether excluded from the probable cause inquiry, so long as they are "clarified" to correct their misleading effect. See ante, at 1365 ("Even if it is assumed that Young, by using the word received, intended deliberately to mislead the magistrate into believing that Wilkes received the summons in person, rather than on her car, his statement still plainly conveys, even without the possible inference that she personally received the summons, the uncontroverted fact that the ticket had been placed on Wilkes' car") (emphasis added). This, again, is plainly wrong. It is settled law that once a warrant affidavit is shown to include a statement that is deliberately or recklessly false or misleading, the existence of probable cause must be judged with that statement altogether removed, redacted, excised, or excluded from the affidavit, not clarified or explained to remove any potentially misleading inferences that may arise from it. See Franks, 438 U.S. at 156, 98 S.Ct. at 2676 (probable cause determination must be made "with the affidavit's false material set to one side," on the basis of its "remaining content"); Hindman, 746 F.2d at 1067 ("Under Franks, ... statements in an affidavit based on intentional or reckless misrepresentations must be struck, and the warrant's validity then judged on its remaining contents") (emphasis added); 2 LaFave, supra, Sec. 4.4(c), at 52 (Supp.1993) ("when the Franks defect is [the] inclusion in the affidavit of recklessly or knowingly false information, that information must be deleted and the affidavit judged on the basis of the remaining information") (emphasis added). The statement that must be redacted here is the statement that Mrs. Wilkes had "received" a "summons" requiring her to report to Magistrate's Court, which, as indicated, was misleading in at least two respects. If that statement is redacted from the affidavit, it contains no information whatsoever that "plainly conveys ... the uncontroverted fact that the ticket had been placed on Wilkes' car," ante, at 1365, since it contains no mention of anything being placed on her car, be it a summons or a ticket.
 
 
 46
 Finally, even if Franks did permit the sort of "clarification" the majority has in mind, it could not be accomplished here without running afoul of another basic tenet of Fourth Amendment jurisprudence: the rule that "an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." Whiteley v. Warden, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n. 8, 28 L.Ed.2d 306 (1971); see Aguilar v. Texas, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 723 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention") (emphasis in original); Spinelli v. United States, 393 U.S. 410, 413 n. 3, 89 S.Ct. 584, 587 n. 3, 21 L.Ed.2d 637 (1969) (same). The majority wants to "clarify" Young's misrepresentation with evidence that a parking ticket captioned "summons" had in fact been placed on the windshield of a car registered in Mrs. Wilkes' name, a fact which it characterizes as "uncontroverted." Ante, at 1365. Young may well have had reason to believe, at the time he signed the blank affidavit, that such a ticket had been left on Mrs. Wilkes' car. But that information was not properly before the issuing magistrate. The only information Young himself communicated to the issuing magistrate was contained in his written affidavit. That affidavit said nothing whatsoever about a "summons," "ticket," or anything else being left on Mrs. Wilkes' car. Young may have said something to this effect to the magistrate's secretary, but there was no evidence that she relayed this statement to the issuing magistrate; and even if she had, it still could not properly be considered, since it was not made under oath. See U.S. Constit. amend. IV (probable cause may be established only by information related to the magistrate "on Oath or affirmation"); Tabasko v. Barton, 472 F.2d 871, 874 (6th Cir.1972) (affiant's oral statements to issuing magistrate could not be used to supplement his written affidavit, because they were not made under oath), cert. denied, 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973); Frazier v. Roberts, 441 F.2d 1224, 1227-29 (8th Cir.1971) (same). Under these circumstances, the fact that a ticket labelled a "summons" had been left on Mrs. Wilkes' car--even if known to Young himself, and since admitted by Mrs. Wilkes--cannot properly be considered in determining whether the warrant was supported by probable cause. See State v. Thompson, 178 W.Va. 254, 358 S.E.2d 815, 817 (1987) (there is no authority "for the proposition that a warrant can survive challenge when it is supported only by a false statement, even though facts could have been alleged at the time that would have justified the issuance of the warrant").
 
 
 47
 At bottom, the majority's decision seems to rest on little more than the notion that in an after-the-fact probable cause challenge to an arrest made pursuant to a warrant, all doubts must be resolved in favor of the arrest's validity, because of the strong preference for the use of warrants. See United States v. Ventresca, 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965) ("in a doubtful or marginal case a search [or arrest] under a warrant may be sustainable where without one it would fail"). But this general rule of deference to a magistrate's finding of probable cause has no proper application where, as here, it has been established that the magistrate's very finding was distorted by deliberate or reckless misstatements contained in the warrant application. See 2 LaFave, supra, Sec. 4.4(c), at 199. "[W]hen it has been established that the [magistrate's] earlier finding of probable cause was based upon a broader set of 'facts,' some of which are now shown to be false, there is no longer any reason to give deference to that earlier finding," and a court revisiting the probable cause issue with the false or misleading allegations excised from the affidavit should resolve "doubtful or marginal" cases in the defendant's favor, as it would if the action in question had been taken without a warrant. Id. A contrary rule would make a mockery of the probable cause requirement, by encouraging police officers to "sanitize" doubtful arrests with warrants obtained on the basis of affidavits that contain deliberate falsehoods designed to mislead a magistrate into finding probable cause where there is none. See Franks, 438 U.S. at 168, 98 S.Ct. at 2682-83.
 
 
 48
 In the end, the basic difference between the majority's approach to this probable cause issue and mine probably turns on the importance we attach to the need for rigid adherence to the "technicalities" of the requirement. I believe we should hold firm on them--for good reason. Looked at from the law enforcement side, the good faith rule of Leon in criminal prosecutions and good faith immunity doctrine in civil matters give all the protection that is needed against the suppression of evidence and the chilling of police initiative, practical consequences otherwise flowing from found violations that have been deemed intolerable for policy reasons. With those protections in place, no relaxation of the substantive requirement itself is warranted to give further protection to the criminal justice system and to individual law enforcement officers. And, more critically, looked at from the arrestee's side: "The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice.' " Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963) (quoting Brinegar, 338 U.S. at 176, 69 S.Ct. at 1311).
 
 
 49
 This case provides a prime example of a law-abiding citizen's being left at the mercy of low-level official caprice, callous inattention, and deliberate indifference by a judicial willingness to relax the fundamental requirements, apparently out of some overriding sense that there simply is not that much at stake here--either for this plaintiff or for the Fourth Amendment.
 
 III.
 
 50
 Because I would hold that the jury's finding that Mrs. Wilkes was arrested without probable cause was firmly supported, I must go on to consider, as the majority does not, whether the evidence was also sufficient to support the jury's further findings that Young and the County were liable for that constitutional violation under Sec. 1983.
 
 A.
 
 51
 I take first the question of Young's personal liability. Mrs. Wilkes' Sec. 1983 claim against Young is somewhat unusual, because of where he stands in the chain of events leading up to the constitutional violation of which she complains. The normal target of a Sec. 1983 action for an arrest without probable cause is the officer who actually made the arrest. See, e.g., Sevigny v. Dicksey, 846 F.2d 953 (4th Cir.1988) (warrantless arrest). But Young did not arrest Mrs. Young himself; he swore out the affidavit upon which the warrant for her arrest was issued, a warrant which was then issued and executed by others. Can he still be held liable under Sec. 1983 for the injuries she suffered when she was arrested without probable cause? The answer, on current doctrine, clearly is that he may be.
 
 
 52
 Section 1983 creates a civil damages remedy against "[e]very person who, under color of [state law] ..., subjects, or causes to be subjected, any citizen ... to the deprivation of ... rights ... secured by the Constitution." 42 U.S.C. Sec. 1983. While the Supreme Court held early on that the "subjects, or causes to be subjected" language does not permit the imposition of vicarious liability, Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978), it has also made clear that it does permit the imposition of liability upon actors more remote than those who actually inflict the ultimate constitutional injury, when their own conduct can be said to have played a significant role in "causing" that injury. Id. at 692, 98 S.Ct. at 2036-37 (municipality may be held liable under Sec. 1983 for constitutional violations committed by its employees, when those violations are shown to have been "caused" by some official policy or custom of the municipality); City of Canton v. Harris, 489 U.S. 378, 385-86, 109 S.Ct. 1197, 1202-03, 103 L.Ed.2d 412 (1988) (same); see also Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir.1984) (holding that supervisory officials may be held liable under Sec. 1983 for constitutional violations committed by their subordinates on a similar analysis), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). But in order to prevent this remote actor liability from sliding into vicarious liability, courts have insisted on a showing that the remote actor himself was somehow at fault and that this fault was a proximate cause of the ultimate constitutional violation suffered by the plaintiff. See, e.g., Canton, 489 U.S. at 388-91, 109 S.Ct. at 1204-06 ("fault" and "causation" are essential prerequisites for municipal liability); Spell v. McDaniel, 824 F.2d 1380, 1385-91 (4th Cir.1987) (same), cert. denied, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); Slakan, 737 F.2d at 372-76 (same re supervisory liability).
 
 
 53
 Applying these general principles, a number of courts have recognized that Sec. 1983 liability may be imposed in the situation at hand in this case upon an official who submits a false or misleading affidavit to a magistrate, on the basis of which a warrant is issued that results in an arrest without probable cause. See DeLoach v. Bevers, 922 F.2d 618, 621-23 (10th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991); Olson v. Tyler, 771 F.2d 277, 280-82 (7th Cir.1985); Pennington v. Hobson, 719 F.Supp. 760, 767 (S.D.Ind.1989).[11] Though these cases have not always couched their analysis explicitly in the language of "fault" and "causation," the evidentiary showing they have required to impose liability upon the false affiant plainly suffices to establish both of those elements: (i) that the defendant submitted a warrant affidavit containing statements he knew to be false or misleading, or would have known to be so had he not recklessly disregarded the truth (the "fault" component), and (ii) that the magistrate would not have had probable cause to issue the warrant without those false statements or misleading statements (the "causation" component). See Olson, 771 F.2d at 281 (in such circumstances, "not only is [the affiant's] conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner"); DeLoach, 922 F.2d at 621-22 (same).
 
 
 54
 As Mrs. Wilkes argued below, and the jury found, the evidence developed at trial was sufficient to hold Young liable under Sec. 1983 on such a theory. As explained earlier, the evidence was sufficient to permit the jury to find that the statement in Young's affidavit that Mrs. Wilkes had "received" a "summons" to appear in Magistrate's Court was materially false or misleading. The evidence was also sufficient to permit the jury to find that Young made this false or misleading statement with at least reckless disregard for its truth, if not actual knowledge of its falsity; indeed, the majority concedes as much in its discussion of the state-law outrage claim. Ante, at 1366 ("the jury might have found that Young was, by signing the blank affidavit, reckless as to the affidavit's accuracy"). Finally, the evidence was sufficient to permit the jury to find that Young's deliberate or reckless misrepresentations were a proximate cause of the wrongful arrest, since it was undisputed that the sole basis for the magistrate's issuance of the arrest warrant was Young's misleading statement that Mrs. Wilkes had failed to appear in court after receiving an official summons to do so. I would therefore affirm the damage award entered against Young on the Sec. 1983 claim.[12]
 
 B.
 
 55
 Though the question is a good deal closer, I would also find the evidence sufficient to support the jury's verdict against the County under Sec. 1983. Mrs. Wilkes' theory against the County was that the constitutional violation she suffered here--an arrest without probable cause--was the proximate result of a customary practice that Young and his subordinates had fallen into with respect to the prosecution of parking violations, and failures to appear in connection with them, a custom whose continued existence was fairly attributable to the County, because it had been condoned by its policymaking officials. We have previously recognized the validity of such a "condoned custom" theory of municipal liability. See Spell v. McDaniel, 824 F.2d 1380, 1390-91 (4th Cir.1987), cert. denied, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Though the issue is undoubtedly a close one, I think the evidence adduced at trial, viewed in the light most favorable to Mrs. Wilkes and giving her the benefit of all reasonable inferences therefrom, was sufficient to permit a reasonable jury to find the County liable under such a "condoned custom" theory.
 
 
 56
 Young's own uncontradicted testimony showed that he and his subordinates in the County's Buildings and Grounds Department had a long-standing practice of issuing crude homemade "summonses" to appear in Magistrate's Court to the owners of cars found parked illegally on County property, JA58-59, and of serving these so-called "summonses" solely by leaving them on the windshields of the cars, JA60, 87-88. Barry Elliott, who as County Administrator was Young's immediate superior and had final authority to set County policy with respect to the enforcement of municipal parking rules and regulations, admitted that he had actual knowledge that Young and his subordinates were issuing these so-called "summonses" and serving them simply by leaving them on the windshields of cars registered in the owner's name. JA73. Young testified that when the owner of a car on which one of these so-called "summonses" had been left failed to report to Magistrate's Court as directed, it was his practice to go to the Magistrate's office and sign an affidavit stating that they had failed to appear in Magistrate's Court as required by an official summons. JA65-67.[13] Young testified that the County Administrator, Barry Elliott had given him authority to sign these affidavits, JA60, and that Elliott was aware that he was doing so, JA 88, but did nothing to put a stop to this until after Mrs. Wilkes filed this lawsuit. JA67. Though Elliott's testimony was somewhat ambiguous, the jury could reasonably have interpreted it as confirming this. JA72-73. Finally, the County's Chief Magistrate testified that the magistrates in Florence County had been issuing warrants for the arrest of individuals who failed to appear in response to these irregular-looking "summonses," based on the affidavits submitted by Young and his cohorts. JA79-82.
 
 
 57
 On this record, the jury could reasonably have found that Young and his subordinates had a customary practice of signing false or misleading affidavits for the arrest of individuals who failed to appear in Magistrate's Court as directed by homemade "summonses" placed on cars registered in their names; that the continued existence of this custom was fairly attributable to the County, because its policymaking officials had knowledge of its existence but failed, as a matter of specific intent or deliberate indifference, to put a stop to it; and that this custom was a proximate cause of the specific constitutional violation that occurred here, an arrest without probable cause, because it made such a violation almost bound to happen, sooner or later. Because these findings are in turn sufficient to support municipal liability under a "condoned custom" theory, see Spell, 824 F.2d at 1390-91, I would reject the County's challenge to the sufficiency of the evidence to support the jury's verdict against it on the Sec. 1983 claim.IV.
 
 
 58
 To conclude, I disagree with the majority's basic conclusion that the evidence was legally insufficient to support the jury's finding of a Fourth Amendment violation here. Because I also think the evidence was sufficient to support the jury's findings that Young and the County are liable for that Fourth Amendment violation under Sec. 1983, and that the verdicts rendered on the Sec. 1983 claim are in and of themselves sufficient to support all of the damages awarded against Young and the County, I would affirm the judgments entered against them in their entirety, without reaching the question whether the evidence was sufficient to permit the jury to find for Mrs. Wilkes on her state-law outrage claim.
 
 
 
 [1]
 The citation to S.C.Code Sec. 17-15-90, which addresses failure to appear following arrest and release on personal recognizance, is obviously a clerical error. The intended citations presumably were to S.C.Code Secs. 56-5-710(1) (giving local authorities the power to regulate parking of vehicles) and 56-5-730 (making it a misdemeanor not to perform any act required in chapter 5 of title 56). Because it appears that section 56-5-710(1) authorized the issuance of the summons ordering Wilkes to appear in magistrate court, it would clearly have been a misdemeanor under section 56-5-730 for Wilkes to have failed to appear, contrary to the suggestion in the dissent, post at 1371-72. Cf. 1989 S.C. Op. Atty. Gen No. 89-88, p. 237 (misdemeanor violation of Sec. 56-5-730 to refuse to obey order issued pursuant to authority in chapter 5)
 
 
 [2]
 Wilkes also set forth a substantive due process claim in her complaint, although she has wisely elected not to press this claim on appeal. As the Supreme Court has recently ruled, an individual alleging that he was prosecuted in the absence of probable cause states no substantive due process claim. Albright v. Oliver, --- U.S. ----, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Such a claim, the Court held, can only be judged under the Fourth Amendment. Id. ---- - ----, 114 S.Ct. at 810-12
 
 
 [3]
 In fact, the only information even potentially relevant to the failure to appear offense not known to Young when he signed the affidavit was whether Wilkes ever had actual notice of her duty to appear. (Of course, we now know that Wilkes actually did know about the ticket and could only have been unaware of her obligation to appear in court by negligently failing to read it.) However, whether or not proof that Wilkes knew of the ticket would be necessary to convict her of the failure to appear offense, it is beyond question that such proof is not necessary to establish probable cause to arrest her for not appearing in court in response to the express requirement of the summons. See, e.g., Bennett v. City of Grand Prairie, Texas, 883 F.2d 400, 405 (5th Cir.1989) (probable cause "requires 'much less evidence' than is required to convict") (citation omitted); see also Brinegar, 338 U.S. at 173, 69 S.Ct. at 1309 (large difference in "quanta and modes of proof" between establishing guilt and probable cause)
 
 
 [4]
 We note as well that the South Carolina Tort Claims Act would appear to preclude recovery for any loss resulting from intentional infliction of emotional harm. S.C.Code Sec. 15-78-30(b), (f) (Supp.1990)
 
 
 [1]
 Epitomizing this basically dismissive view of the whole matter, the majority says that Mrs. Wilkes "agreed to drive down to the magistrate's office to resolve the matter", ante, at 1364, and then characterizes her stay in jail as a "rather routine three-to-four hour detention at the ... Sheriff's Office", id. at 1366. A fair reading of the record belies any such characterizations of these events. Once presented with a warrant for her arrest, Mrs. Wilkes of course complied with the deputy sheriff's demand that she go with him to the magistrate's office, as any law-abiding citizen would have done. But she certainly did not do so with the understanding that she would be booked and thrown into jail once she got there; to the contrary, she testified that the deputy sheriff had assured her that she could take care of everything simply by going down to the magistrate's office with him and paying the fine for the parking ticket. See JA36, 44. Nor would most of us, at least those who have some acquaintance with the realities of incarceration in local jail facilities, be likely to characterize her stay there as a "rather routine" one for a law-abiding citizen such as Mrs. Wilkes
 
 
 [2]
 Mrs. Wilkes' action also included a pendent state law claim for the tort of outrage, which the jury also decided in her favor. Because the damages awarded on that claim were not cumulative of those awarded on the Sec. 1983 claims, hence do not affect the size of the judgment on those claims, I do not address the defendants' challenges to that portion of the judgment
 
 
 [3]
 The undisputed evidence at trial established that the only notice that Mrs. Wilkes was ever given of her alleged obligation to appear in Magistrate's Court was contained in a crude homemade parking ticket left on the windshield of her car when her daughter parked it in front of the Florence County Social Services Building while she was attempting to obtain disaster relief following Hurricane Hugo. Though this document was captioned "summons" and directed the owner of the car to appear in Magistrate's Court at a certain time, it did not look like an official summons: it was handwritten on a piece of plain white paper, rather than being typed on a standard printed summons form, and it was signed by an employee of the County Building and Grounds Department, rather than by a judge or a police officer. Mrs. Wilkes admitted that she knew that her daughter told her she had found this piece of paper on her car. But she also testified that she herself had never seen it, and that her daughter told her that she had been assured--by both a deputy sheriff and someone in the magistrate's office--that it could not be a legitimate summons, because of its irregular form and manner of service, and that they should therefore disregard it
 
 
 [4]
 Accord Reeves v. City of Jackson, 608 F.2d 644, 650 (5th Cir.1979); Lester v. City of Chicago, 830 F.2d 706, 714-15 (7th Cir.1987); Giordano v. Lee, 434 F.2d 1227, 1230 (8th Cir.1970), cert. denied, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971); Stringer v. Dilger, 313 F.2d 536, 541 (10th Cir.1963); DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991); see also Llaguno v. Mingey, 763 F.2d 1560, 1565 (7th Cir.1985) (en banc) (Posner, J.) (applying same rule for existence of probable cause to search); B.C.R. Transport Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir.1984) (same)
 
 
 [5]
 After instructing the jury that to succeed on her Fourth Amendment claim, Mrs. Wilkes would have to show that her arrest was "not based upon probable cause," the trial judge explained that:
 Probable cause exists where the facts and circumstances within a person's knowledge, including any reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed.
 Record, vol. 3, at 107. This definition of probable cause is virtually identical to the one that the majority purports to be applying in making its own apparently de novo inquiry into the issue of probable cause. See ante, at 1365 & n. 3 (probable cause "requires enough evidence to warrant a man of reasonable caution in the belief that an offense has been or is being committed") (internal quotations omitted).
 
 
 [6]
 There is no claim here that the arrest itself was valid, even if the warrant was not, because the arresting officers themselves had sufficient information, independent of the warrant, to give them probable cause to make a warrantless arrest
 
 
 [7]
 The majority suggests that because Sec. 56-5-710(1) "appears" to have "authorized the issuance of the summons ordering Wilkes to appear in magistrate court," her failure to do so "would clearly have been a misdemeanor under section 56-5-730." Ante, at 1364 n. 1. This argument cannot be squared with the language of the statutes involved
 As the majority concedes, Sec. 56-5-730 makes it a misdemeanor only to "do any act forbidden [in] or to fail to perform any act required in this chapter [Chapter 5 of Title 56]." S.C.Code Ann. Sec. 56-5-730 (Law. Co-op.1977) (emphasis added). Though Sec. 56-5-710(1) appears in Chapter 5 of Title 56, it does not of its own force "forbid" or "require" anyone to perform any act in the sense referred to in Sec. 56-5-730; instead, it simply allocates regulatory power between the local authorities and the state, reserving to the former the power to regulate the parking of vehicles on streets and highways under their jurisdiction, to the extent they can do so without undermining the provisions of Chapter 5 that regulate traffic on the state's highways. See S.C.Code Ann.Sec. 56-5-710 ("Subject to the limitations proscribed in Sec. 56-5-930, the provisions of this chapter shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from ... (1) Regulating the standing or parking of vehicles"). There is no authority for the majority's suggestion that Sec. 56-5-730 was intended to criminalize the failure to obey any order issued by local authorities under the general power to regulate parking reserved to them by this savings provision. The South Carolina Attorney General opinion relied on by the majority does not support this proposition, for it involved the failure to perform an act that was specifically required by the terms of a provision of Chapter 5 itself: Sec. 56-5-740, which provides that "[n]o person shall willfully fail or refuse to comply with any lawful order or direction of any police officer, fireman or uniformed adult school crossing guard invested by law with authority to direct, control or regulate traffic." And if Sec. 56-5-730 made it a misdemeanor to fail to comply with a parking summons issued by local authorities under the power reserved to them by the Sec. 56-5-710 savings provision, as the majority suggests, the legislature would have had no reason to amend Chapter 5 in 1992 to add Sec. 56-7-80(F), which makes it a misdemeanor to fail to appear in court as directed by a summons issued by municipal law enforcement authorities to enforce a municipal ordinance, for the failure to obey such a summons would already be a misdemeanor under Sec. 56-5-730. See infra n. 9.
 
 
 [8]
 When a defendant fails to comply with a summons to appear before a magistrate, the normal procedure in South Carolina, as elsewhere, is for the magistrate to direct the clerk to issue a bench warrant under which the defendant is physically brought before him to answer the noticed charge, not to have him arrested for the separate "crime" of contempt. 1976-77 S.C. Op. Att'y. Gen. No. 77-406 (Dec. 27, 1977); see S.C.Code Ann. Sec. 22-3-930 (Law. Co-op.1989) (when person fails to comply with a summons to appear issued by a magistrate, magistrate "may issue a rule commanding such witness to be brought before him"); id. Sec. 14-17-260 (Law. Co-op.1977) (authorizing clerk to issue bench warrant when directed to do so by court). This is presumably what the magistrate before whom Mrs. Wilkes had been scheduled to appear had in mind when he told Young to go down to his office and "do what is necessary," JA65, after she failed to show up in court: the issuance of a bench warrant commanding her to be brought before him to answer for the alleged parking violation. But the warrant under which Mrs. Wilkes was arrested was not a bench warrant issued to compel her appearance on the underlying parking offense; it was a warrant for her arrest on a separate criminal charge of failure to appear. Had Young bothered to read the form he signed after it was completed by the magistrate's secretary, rather than signing it in blank and leaving her to fill it out as she saw fit, he might have discovered this problem
 
 
 [9]
 After Mrs. Wilkes filed this lawsuit, the South Carolina Code was amended to make it a misdemeanor to fail to appear in court as directed by an "ordinance summons"--a uniform summons form adopted by a municipality, in accordance with certain statutory requirements, for use in the enforcement of its ordinances--with which one has been properly served. 1992 S.C. Acts No. 328, Sec. 1 (codified at S.C.Code Ann. Sec. 56-7-80(F)) (Law. Co-op.1993 Supp.) (effective April 10, 1992). The affidavit in question here was issued in November of 1989, more than two years before this provision went into effect
 
 
 [10]
 The Supreme Court's decision in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which created the good-faith exception to the exclusionary rule, expressly left the Franks rule intact. Id. at 923, 104 S.Ct. at 3420-21 (good-faith exception does not apply, and suppression remains an appropriate remedy, when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth")
 
 
 [11]
 Several courts have gone even further and held that an officer who induces a magistrate to issue a warrant not supported by probable cause by submitting a completely truthful affidavit may be held liable under Sec. 1983 for a resulting Fourth Amendment violation, if he should have known, at the time he applied for the warrant, that the affidavit did not establish probable cause. See Briggs v. Malley, 748 F.2d 715 (1st Cir.1984), aff'd sub nom. Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); Garmon v. Lumpkin County, 878 F.2d 1406 (11th Cir.1989) (same)
 
 
 [12]
 Young cannot escape liability here on the basis of qualified immunity. Qualified immunity is an affirmative defense, Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736-37, 73 L.Ed.2d 396 (1982); Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), which can be waived for appeal purposes if not properly raised and preserved in the trial court. Buenrostro v. Collazo, 973 F.2d 39, 44 (1st Cir.1992); Walsh v. Mellas, 837 F.2d 789, 799-800 (7th Cir.), cert. denied, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988); Kennedy v. City of Cleveland, 797 F.2d 297, 300 (6th Cir.1986), cert. denied, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987). Though Young pleaded the defense of qualified immunity in his answer, he did not assert it as a basis for dismissal prior to trial, ask that it be submitted to the jury, urge it as a ground for overturning the verdict in his post-verdict JNOV motion, or otherwise press it in the trial court, nor has he attempted to raise it in any fashion in this court. Under these circumstances, he has waived any right that he might otherwise have had to challenge the judgment against him on that ground. See Walsh, 837 F.2d at 799-800 (defendant in Sec. 1983 action, who raised defense of qualified immunity in answer but failed to bring it to the trial court's attention, despite having had numerous opportunities to do so, waived right to assert the defense on appeal). Accordingly, I would not reach the question whether a defense of qualified immunity might be available on these facts. But see DeLoach, 922 F.2d at 621-22 (affiant who makes deliberate or reckless misrepresentations in order to obtain an arrest warrant is not entitled to qualified immunity, because his conduct is per se objectively unreasonable); Olson, 771 F.2d at 281-82 (same); cf. Malley v. Briggs, 475 U.S. at 345, 106 S.Ct. at 1098 (when police officer applies for arrest warrant on the basis of an affidavit that a reasonable officer in his position would have known failed to establish probable cause, his application for the warrant is not objectively reasonable for purposes of qualified immunity analysis, because it "create[s] the unnecessary danger of an unlawful arrest")
 
 
 [13]
 Though Young testified that he did not know these affidavits might result in the issuance of arrest warrants, JA66, the jury was entitled to discount this self-serving testimony as manifestly incredible, in light of the evidence that on the standard form used by all magistrates in South Carolina, including those in Florence County, to issue arrest warrants, the space for the affiant's statement appears on the same page as the warrant itself, and the caption "ARREST WARRANT" appears in bold print immediately beneath the line for the affiant's signature. See JA116